IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 06-285 |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT METLIFE, INC.'S
## MOTION TO DISMISS

Defendant MetLife Inc. hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing the Plaintiffs' Complaint against it.   The grounds for this Motion are more fully set forth in Defendant MetLife, Inc.'s Opening Brief in Support of Its Motion to Dismiss filed contemporaneously herewith.

**McCarter & English LLP**

/s/ Paul A. Bradley
Paul A. Bradley (DE ID No. 2156)
919 North Market Street, Suite 1800
P.O. Box 111
Wilmington, Delaware  19899
(302) 984-6300
Attorney for Defendant
MetLife, Inc.

Date:   May 15, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and<br>and Patricia Bonk Irrevocable Trust,<br>HARRY BONK and PATRICIA BONK, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 06-285 |
| RICHARD WEZNER, JOHN HANCOCK<br>MUTUAL LIFE INSURANCE CO. and<br>METLIFE, INC., | ) ) ) | |
| Defendants. | ) ) | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2006, the Court having heard and

considered Defendant MetLife, Inc.'s Motion to Dismiss and responses thereto

IT IS HEREBY ORDERED that Defendant MetLife, Inc.'s Motion to Dismiss is granted.

_____
J.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 06-285 |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**METLIFE, INC.'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**

McCARTER & ENGLISH, LLP

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)
919 N. Market Street, 18th Floor
P.O. Box 111
Wilmington, DE  19899
(302) 984-6300
Attorney for Defendant
MetLife, Inc.

Dated: May 15, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS.........................................................................1

SUMMARY OF ARGUMENT.........................................................................................2

STATEMENT OF FACTS..............................................................................................4

ARGUMENT .............................................................................................................5

  I.  LEGAL STANDARD.......................................................................................5

  II.  METLIFE IS AN IMPROPER PARTY TO THIS ACTION AND
    THE COMPLAINT SHOULD THEREFORE BE DISMISSED AS
    AGAINST IT.................................................................................................5

  III. PLAINTIFF'S FIDUCIARY DUTY CLAIMS SHOULD BE
    DISMISSED..................................................................................................6

  IV. PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD
    BE DISMISSED.............................................................................................7

CONCLUSION .........................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Cases**                                                                    **Page**

*Conley v. Gibson,*
    355 U.S. 41 (1957) ........................................................................... 5

*LaSalle National Bank v. Perelman,*
    82 F. Supp. 2d 279 (D.Del. 2000) ............................................... 8

*Resource Ventures, Inc. v. Resources Management,*
    42 F. Supp. 2d 423 (D.Del. 1999) ............................................... 7

*Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts, Inc.,*
    140 F.3d 478 (3d Cir. 1998)........................................................ 5

## STATE CASES

*Bird's Constr. v. Milton Equestrian Ctr.,*
    2001 WL 1528956, *4 (Del. Ch.) ................................................ 6
*Corrado Brothers v. Twin City Fire Insurance Co.,*
    562 A.2d 1188 (Del. 1989) ........................................................... 7

*Crosse v. BCBSD, Inc.,*
    836 A.2d 492 (Del. 2003) ............................................................. 6

*Locklear v. Remington,*
    2003 WL 21003722 (D. Del.) ....................................................... 5

*Mentis v. Delaware American Life Insurance Co.,*
    1999 WL. 744430 (Del. Super. July 29, 1999) ........................... 7

*Wal-Mart Stores, Inc. v. AIG Life Insurance Co.,*
    872 A.2d 611 (Del. Ch. 2005).................................................. 6, 7

*Wood v. Coastal States Gas Corp.,*
    401 A.2d 932 (Del. 1979) ............................................................. 8

## FEDERAL STATUTES

28 *U.S.C.* §§ 1441 ........................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................... 1

**NATURE AND STAGE OF PROCEEDINGS**

Plaintiffs filed this action in the Superior Court of the State of Delaware in and for New

Castle County on or about March 9, 2006. Defendant, MetLife, Inc. ("MetLife"), removed the

matter to this Court on May 1, 2006 pursuant to 28 *U.S.C.* §§ 1441 and 1446 based upon

diversity of citizenship between the parties. MetLife, Inc. now moves in lieu of answering for

dismissal of the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

1

## SUMMARY OF ARGUMENT

The complaint should be dismissed as against MetLife because MetLife has absolutely no connection to the issues in controversy. The complaint asserts various causes of action based upon the sale and purchase of life insurance policies issued by various insurers, including John Hancock Mutual Life Insurance Company, Cigna (Compl. ¶6), Lincoln National, West Coast Life (Compl. ¶9), and General American (Compl. ¶12). None of the insurance transactions involved any life insurance policy issued by MetLife. Plaintiffs allege that defendant, Richard Wezner ("Wezner"), was the insurance producer involved in the sale of each of the policies referenced in the complaint. They further allege that Wezner was employed by MetLife beginning in 1999. (Compl. ¶8). However, as stated in MetLife's Notice of Removal, Wezner was never employed by MetLife. Therefore, MetLife has absolutely no connection to this controversy. The complaint against it should be dismissed.

Even if MetLife was a proper party to this action – which it is not – plaintiffs have not plead facts sufficient to state claims sounding in breach of fiduciary duty or unjust enrichment as against MetLife. An insurer simply does not owe any fiduciary duty to an insured under Delaware law. Therefore, plaintiffs cannot allege any set of facts under which MetLife could be liable for breach of fiduciary duty in this case.

Similarly, plaintiffs cannot state a claim for unjust enrichment as against MetLife. There is no allegation that MetLife issued any of the insurance policies made the subject of the complaint. Therefore, MetLife did not receive any premium payments. MetLife was in no way "enriched" by virtue of any payments made by plaintiffs. Moreover, even if MetLife had been "enriched" by plaintiffs – which it was not – plaintiffs would have adequate remedies at law to

recover any damages they had suffered as evidenced by their claims for common law fraud,

misrepresentation and conversion.

## STATEMENT OF FACTS

The complaint asserts various causes of action based upon the sale and purchase of life insurance policies issued by various insurers, including John Hancock Mutual Life Insurance Company, Cigna (Compl. ¶6), Lincoln National, West Coast Life (Compl. ¶9), and General American (Compl. ¶12). There is no allegation that MetLife issued any policy to plaintiffs or was otherwise involved in any of the life insurance transactions in any way.

4

**ARGUMENT**

### I.    LEGAL STANDARD

Federal Court Rule 12(b)(6) requires that the "court…accept as true all material allegations of the complaint and…construe the complaint in the light most favorable to the plaintiff." *Locklear v. Remington*, 2003 WL 21003722, at \*1 (D. Del.); *see also Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief can be granted under any set of facts consistent with the allegations in the complaint." *Id.; see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In this matter, even when this Court accepts as true all of the facts alleged in the complaint, and permits all reasonable inferences in plaintiffs' favor, plaintiffs have nonetheless failed to set forth a claim for which relief can be granted under Delaware law against MetLife. Accordingly, the complaint against MetLife should be dismissed.

### II.    METLIFE IS AN IMPROPER PARTY TO THIS ACTION AND THE COMPLAINT SHOULD THEREFORE BE DISMISSED AS AGAINST IT.

The Complaint fails to allege any action on the part of MetLife giving rise to plaintiffs' alleged claims. There is no allegation that the policies of insurance made the subject of the complaint were issued by MetLife. Nor is there any suggestion that MetLife perpetrated, participated in, facilitated, encouraged, or otherwise engaged in any conduct relevant to plaintiffs' claims.

MetLife's only alleged connection to the matter in controversy is the allegation that defendant Richard Wezner was employed by MetLife. However, as stated in MetLife's Notice of Removal, Wezner was not employed by MetLife. Thus, MetLife's sole alleged connection to

5

this controversy, in fact, does not exist. Under these circumstances, the Complaint should be dismissed as it relates to MetLife.

## III.    PLAINTIFF'S FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED.

Plaintiffs have not alleged any fact to establish the existence of any legal relationship between themselves and MetLife whatsoever, let alone a fiduciary relationship. There is no allegation even that MetLife issued a policy of insurance to any of the plaintiffs. Even if MetLife had issued an insurance policy, however, no fiduciary duty would arise. Delaware law is clear that there is no fiduciary duty between an insurer and its insured, either in the sale or administration of a policy. Therefore, plaintiffs' fiduciary duty claim as against MetLife fails as a matter of law.

Delaware courts are reluctant to expand the application of fiduciary duties. *Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*, 872 A.2d 611, 625 (Del. Ch. 2005) citing *Bird's Constr. v. Milton Equestrian Ctr.*, 2001 WL 1528956, *4 (Del. Ch.). The duty is only to be extended to "legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal in which the fiduciary is required to pursue solely the interests of the beneficiary in the property." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 495 (Del. 2003).

Under this standard, the Supreme Court of Delaware has held that an insurance contract does not give rise to a fiduciary relationship because the interests of the insured and the interests of the insurer are not perfectly aligned. *Id.* Rather, the relationship is purely contractual. *Id.*

> Instead, the law is clear that the insurer/insured relationship is one of contract that does not give rise to a fiduciary relationship. Here, as in most cases, between insurer and insured, the relationship between Wal-Mart and the Insurers is a straightforward commercial relationship arising from contract. It is in all of its aspects an arm's-length transaction. It involves no element of confidentiality, joint undertaking, or trust and dependence.

6

*Wal-Mart Stores, Inc.*, 872 A.2d at 626; *see also Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del. 1989) ("[t]he term fiduciary overstates the essential relationship arising out of a contract of insurance."); *Mentis v. Delaware American Life Ins. Co.*, 1999 WL 744430 (Del. Super.) (holding that an insurer does not owe a fiduciary duty to the insured in the sale of a life insurance policy). Attached hereto as Exhibit A.

Nor have plaintiffs alleged facts sufficient to establish a fiduciary relationship with any insurance agent or broker in the sale of any policy at issue. Delaware courts are careful not to extend fiduciary duty to a broker absent allegations of specific facts, which, if proven to be true, demonstrate that the relationship went beyond that occurring in normal commercial transactions. *Wal-Mart Stores, Inc.*, 872 A.2d at 627. Thus, the court in *Wal-Mart Stores, Inc.* granted the insurance brokers' motion to dismiss, reasoning that:

> In the end, Wal-Mart cannot show the existence of a fiduciary relationship by alleging simply that it relied on or "trusted in" the assurances and expertise of the broker-defendant. To rule otherwise would threaten to interject the law of fiduciary duty into a wide range of ordinary commercial relationships generally understood to be governed by the norms of the marketplace, not the scrupulous concerns of equity for persons in special relationships of trust and confidence.

*Id.* at 628.

The law of Delaware is clear that there is no fiduciary relationship between an insurer and its insureds, and plaintiffs have not plead any facts that, if proven, would give rise to a fiduciary relationship between them and any broker or agent. For these reasons, plaintiffs' fiduciary duty claim should be dismissed.

## IV.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED.

Unjust enrichment is a quasi-contractual theory of recovery to remedy the absence of a formal contract under Delaware law. *Resource Ventures, Inc. v. Resources Management*, 42 F.

Supp. 2d 423, 439 (D.Del. 1999). The elements of the cause of action are: i) an enrichment, ii) an impoverishment, iii) a relation between the enrichment and the impoverishment, iv) the absence of justification, and v) the absence of a remedy in law. *LaSalle National Bank v. Perelman*, 82 F. Supp. 2d 279, 294-95 (D.Del. 2000). Where there is a contract providing the measure of plaintiff's rights against defendant, there can be no recovery under an unjust enrichment theory. *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979).

Here, plaintiffs have failed to allege any facts to establish that MetLife received any enrichment, let alone a relationship between a MetLife enrichment and plaintiffs' alleged impoverishment. Although plaintiffs summarily state that they conferred a benefit upon MetLife, among others, by paying Wezner "substantial sums in commissions and premiums from the sale of the Replacement and Current Life Policies," no where in the complaint do plaintiffs allege that MetLife issued any policy of insurance for which premiums were paid. Nor do plaintiffs allege that MetLife received any of the commissions or premiums allegedly paid to Wezner.

Moreover, plaintiffs have failed to establish the lack of an available remedy at law. Plaintiffs have asserted various common law claims, including fraud, negligent misrepresentation and conversion, and have demanded damages pursuant to those claims. Hence, assuming plaintiffs can prove the elements of those causes of action, plaintiffs' own complaint demonstrates the availability of a remedy at law.

Plaintiffs' complaint, on its face, demonstrates their inability to establish the essential elements of a claim for unjust enrichment against MetLife. They have not pled any enrichment of MetLife, let alone enrichment related to plaintiffs' alleged impoverishment. Nor can plaintiffs establish the lack of an available remedy at law. They have, in fact, pled common law causes of

action for damages, which if proven, would afford them a legal remedy.  Because plaintiffs have

failed to plead essential elements of unjust enrichment their claim fails as a matter of law.

## CONCLUSION

For all of the foregoing reasons, the complaint should be dismissed as against MetLife in its entirety. Alternatively, Counts III and V of the complaint should be dismissed for failure to state a claim upon which relief can be granted.

McCARTER & ENGLISH, LLP

/s/ Paul A. Bradley
Paul A. Bradley (DE Bar ID #2156)
919 N. Market Street, 18th Floor
Wilmington, DE 19899
(302) 984-6300
Attorney for Defendant
MetLife, Inc.

Dated: May 15, 2006

# EXHIBIT  A



Not Reported in A.2d, 1999 WL 744430 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

▷
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Anthony P. MENTIS, individually and on behalf of
all others similarly situated
v.
DELAWARE AMERICAN LIFE INSURANCE
COMPANY
**No. C.A. 98C-12-023 WTQ.**

July 28, 1999.

*RE: Letter Opinion and Order on Defendant's
Motion to Dismiss-GRANTED in part and DENIED
in part*
QUILLEN, J.

Dear Ms. Iorii, Mr. Trainer, and Mr. Monhait:

**\*1** This is the Court's Opinion on Defendant's
Motion to Dismiss. For the reasons stated herein,
the Motion is GRANTED with respect to Count I
(breach of fiduciary duty) and Count IV (unfair
trade practices), and DENIED with respect to Count
II (breach of contract), Count III (consumer fraud)
and the statute of limitations.

## FACTS

This purported class-action suit arises from the
alleged use of deceptive sales practices during the
sale of life insurance polices in the 1980s and early
1990s. The primary issue is whether the Plaintiff
has stated a colorable cause of action. Given the
procedural posture of this case, all facts will be
viewed in a light most favorable to the Plaintiff.

Beginning in 1982, Defendant Delaware American
Life Company and its affiliates (collectively "
DelAm") began a solicitation campaign revolving

around "vanishing premium" insurance policies.
These insurance polices were market dependent,
meaning the interest and dividends earned greatly
effected the policy's viability and value. During this
period of solicitation, these polices were apparently
performing very well.

DelAm solicited customers with pre-existing life
insurance policies and informed them that
accumulated dividends and interest on their existing
policies were sufficient to fund a higher coverage
policy without an increase in their current
premiums. In short, they would continue to pay the
same premiums, but would receive more coverage.

DelAm solicited new customers by informing them
that if they purchased a new policy, the interest and
dividends on the policy would eventually pay for
future premiums. This means the policy would
eventually become self-funded, and future
premiums would "vanish." DelAm also informed
prospective purchasers of "flexible premium whole
life" and "universal life" policies that a minimum
premium would be sufficient to maintain a fixed
amount of death benefits until the policy holder
reached the age of 95.

During its solicitations efforts, it is alleged that
DelAm utilized deceptive and inaccurate
representations and illustrations. It is further alleged
that customers were led to believe that "interest and
dividends" would continue to fund their future
premiums, regardless of any rate fluctuations. In
short, customers were not informed that their
policies were market dependent.

Among these customers was the Plaintiff, Anthony
Mentis. In 1984, Mentis owned a $40,000 life
insurance policy issued by Travelers. His premiums
were $250 a month. In 1985, Mentis was solicited
by DelAm to purchase a new policy. Mentis was
allegedly told that if he surrendered his Travelers
policy, which was then worth several thousand
dollars, he could purchase a $50,000 policy from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Not Reported in A.2d, 1999 WL 744430 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

DelAm and maintain the same premiums ($250 a month). In connection with this solicitation, DelAm provided an illustration. The illustration showed that at the current rate of return (12%), Mentis could maintain a $50,000 policy for the same premiums he was currently paying. Mentis alleges that it was never made clear that if the rate of return changed, his payments of $3,000 a year would be insufficient to maintain a $50,000 policy. In fact, Mentis alleges that DelAm fostered the mistaken belief that his premiums would remain the same, regardless of whether interest and dividend rates fluctuated.

**\*2** Everything appeared to go well for the next fourteen years. Then, in August 1998, DelAm informed Mentis that due to a reduction in interest and dividends, he would have to increase his premiums by more than 100% to maintain $50,000 of coverage. Mentis was also told that if he did not increase his premiums, the value of his policy would be reduced to $25,000. By this time, Mentis had paid premiums amounting to over $42,000. In December 1998, Mentis filed suit against DelAm individually, and on behalf of all others similarly situated. Plaintiff's suit alleges that DelAm: (1) breached its fiduciary duty to its customers by utilizing deceptive sales practices (Count I); (2) breached its contract with its policy holders (Count II); (3) committed consumer fraud under 6 *Del. C.* § 2513 (Count III); and (4) committed unfair trade practices under 18 *Del. C.* §§ 2304(1) and (20) (Count IV). Mentis seeks certification as a class action pursuant to Superior Court Civil Rule 23(b)(3), compensatory and punitive damages, a declaration of the policy's death benefits and attorneys' fees and costs. In lieu of filing an answer, DelAm filed a Motion to Dismiss, asserting that Mentis has failed to state a colorable claim and that the action is barred by the statute of limitations.

### STANDARD OF REVIEW

In evaluating a Motion to Dismiss under Superior Court Civil Rule 12(b)(6), the Court must assume all well pleaded facts in the Complaint to be true. *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 410 (1983) (citing *Laventhol, Krekstein, Horwath &*

*Horwath v. Tuckman,* Del.Supr., 372 A.2d 168 (1976). For purposes of a Motion under Rule 12(b)(6), all allegations in the Complaint must be accepted as true. *State use of Certain-Teed Products Corp. v. United Pacific Ins. Co.,* Del.Super., 389 A.2d 777, 778 (1978). A Complaint will not be dismissed unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Nix,* 466 A.2d at 410 (citing *Diamond State Tel. Co. v. University of Del.,* Del.Supr., 269 A.2d 52 (1970)). A Complaint may not be dismissed unless it is clearly without merit, which may be a matter of law or fact. *Diamond State,* 269 A.2d at 58 .

### DISCUSSION

#### A. Breach of Fiduciary Duty-Count I

Count I of the Complaint alleges that DelAm breached its fiduciary duty with its customers by luring them into a position of trust and then utilizing deceptive sales practices. DelAm contends that no fiduciary relationship exists between an insurer and an insured (or a prospective insured), especially in a sales context. Plaintiff asserts that the legal relationship between an insurer and an insured is a question of fact, and that this question cannot be determined on a Motion to Dismiss. Plaintiff asserts that the critical question is whether DelAm held itself out as one possessing superior knowledge, therefore allowing the Plaintiff to rely upon the representations made.

**\*3** Although Delaware law recognizes a contractual duty of good faith and fair dealing between an insured and an insurer, it does not recognize a fiduciary relationship between the two. *Corrado Bros. v. Twin City Fire Ins. Co.,* 562 A.2d 1188, 1192 (1989); *Abex, Inc. v. Koll Real Estate Group, Inc.,* Del. Ch., C.A. No. 13462, 1994 WL 728827, Jacobs, V.C. (Dec. 22, 1994). "[T]he term fiduciary overstates the essential relationship arising out of a contract of insurance." *Corrado,* 562 A.2d at 1192. As the Supreme Court stated in *Corrado:*
The concept of a fiduciary relationship, which

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 3

**Not Reported in A.2d, 1999 WL 744430 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal and in which the fiduciary is required to pursue solely the interests of the beneficiary in the property. *Cf. Loft, Inc. v.. Guth,* 23 Del. Ch. 138, 2 A.2d 225, 238-39 (1938) *aff'd,* Del.Supr., 255, 5 A.2d 503 (1939). The relationship of insurer and insured, however, arises contractually.... This expected clash of interests is clearly not compatible with the concept of a fiduciary.

*Id.* (parenthetical omitted).

The Complaint alleges that DelAm solicited both individuals with existing DelAm policies and those without, in an attempt to sell new insurance policies. In essence, all DelAm did was solicit new and existing customers in an attempt to sell a new product. With respect to those individuals without existing DelAm policies, the transaction was nothing more than an arm's length negotiation concerning the purchase of insurance, wherein both parties were strangers to one another. This type of buyer-seller relationship, with some inherent adversarial nature, does not give rise to fiduciary duties because the interests of the parties are not " incline[d] toward a common goal." *Id.*

With respect to the individuals with existing DelAm polices, the transaction was not between strangers, but instead between those with an insurer-insured relationship. This was not, however, the typical situation where an insurer was failing to pay for treatment, settle a claim, or provide a defense. In those situation, the insurer is held to the duty of good faith and fair dealing as a result of its specific contractual obligations to undertake those burdens. *See Pierce v. International Ins. Co. of Ill.,* Del. Supr ., 671 A.2d 1361, 1367 (1996) (stating that an insurer's obligations arise from the insurance contract). In the situation where an insurer is soliciting an existing customer to purchase a new insurance policy, and create a new contract, there is no specific contractual obligation called into play. Although a general obligation to act in good faith may arise, this obligation, if any, falls short of a fiduciary duty in the traditional sense As before, the interests of the parties are not sufficiently aligned to

create a situation of unwavering trust between the parties and no fiduciary duty exists.

**\*4** Although this Court declines to impose a fiduciary duty upon the insurer-insured relationship, this does not mean that insurers, when soliciting existing and potential customers, are given free reign to utilize deceptive sales practices. This Court simply feels that the deceptive practices alleged in the Complaint are better addressed by the laws designed to protect consumers, i.e. consumer fraud and insurer bad faith, not the laws designed to protect stockholders and trust beneficiaries, i.e. fiduciary duties.[FN1] This Court is also aware that many cases from other jurisdictions, involving similar "vanishing premiums" class actions, hold that the existence of a fiduciary duty in this situation is a fact specific question. *See, e.g., Parkhill v. Minnesota Mut. Life Ins. Co.,* D. Minn, 995 F.Supp. 983, 992 (1998); *Grove v. Principal Mut. Life Ins. Co.,* S.D. Iowa, 14 F.Supp.2d 1101, 1111 (1998) (finding the existence of a fiduciary duty a question of fact). Again, this Court feels that the arenas of consumer protection and insurer bad faith are better equipped to remedy deceptive sales practices than fiduciary duties. Fiduciary duties are the highest imposes by law, and should be cautiously imposed by Courts. This is not such a case. Accordingly, Defendant DelAm's Motion to Dismiss with respect to Count I (breach of fiduciary duty) is GRANTED. IT IS SO ORDERED.

FN1. The facts alleged in Count I, for example, appear to state a claim for common law fraud or deceit. If any modification is needed for such an allegation, it would be modest. Such a claim, however, would be redundant in light of the claim for statutory consumer fraud (Count III), a cause of action less arduous than common law fraud. 6 *Del. C.* § 251; *Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983).

B. Breach of Contract-Count II

Count II of the Complaint alleges that DelAm made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 4

**Not Reported in A.2d, 1999 WL 744430 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

representations, via its sales agents, that if the Plaintiff continued to make the same monthly payments of $250, the policy would retain its $50,000 value. Defendant contends that the insurance contract is a fully integrated document that "explicitly" illustrates the policy's market dependent nature. It contends that any illustrations and representations made by sales representatives are not part of the contract and should be excluded as irrelevant extrinsic evidence. Plaintiff asserts that the written policy was so cumbersome and complex as to make it incomprehensible to the ordinary customer, and that the representations of the insurer's sales agents should be taken into account when construing the policy.

The policy is over twenty pages long. On the first page of the policy, it states that it "may end before the insured reaches the age of 95 if either (1) no premiums are paid after the initial premium or (2) subsequent premiums are not sufficient to continue this policy in force until that time." [FN2] The determination of the policy's benefits are described on pages nine and ten as follows:

> FN2. DelAm Insurance Policy, Defendant's Motion to Dismiss, Exhibit A, at 1 (Dkt. No. 7).

Actual Amount of Proceeds. The actual amount of proceeds will depend on:
the life insurance proceeds determined as above;
the use of the account value during the Insured's life;
any withdraws;
any additional insurance provided by rider;
any increase or decrease in existing coverage;
the insured's suicide during the first 2 policy years; and
a mistake in the Insured's age.

*5 Determining the Account Value. The account value on any monthly due date is determined as follows:
the account value on the prior monthly due date; less any withdraws since the prior monthly due dates; less the monthly deduction for the prior

month; plus one month's interest; plus all premiums received since the prior monthly due date.

Interest. The guaranteed interest rate on account values is shown on the Information page [.36748% compounded monthly]. We may use an interest rate in excess of the guaranteed rate in a manner we determine.[FN3]

> FN3. *Id.* at 9-10

On the subject of integration and modification, the policy states that "[t]his policy and application(s) constitute the entire contract between you and us.... This policy can only be changed, in writing, by one of our executive officers. No other person, including an agent, has any authority to change or reinstate this policy." [FN4] Nowhere in this cumbersome policy is it clearly (or even unclearly) stated that the monthly premiums will increase if the interest rates earned by the policy fall.

> FN4. *Id.* at 16.

The interpretation of contractual language is a question of law to be decided by the Courts. *Pellaton v. Bank of New York,* Del.Supr., 592 A.2d 473, 478 (1991) (quoting *Klair v. Reese,* Del.Supr., 531 A.2d 219, 222 (1987)). If the relevant language is clear and unambiguous, Courts must give the language its plain meaning. *Phillips Home Builders v. The Travelers Ins. Co.,* Del.Supr., 700 A.2d 127, 129 (1997). A contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.,* Del.Supr., 616 A.2d 1192, 1196 (1992). Rather, a contract is ambiguous if the provisions are reasonably susceptible to two or more meanings. *Id.*

A contract is not ambiguous if "the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 5

Not Reported in A.2d, 1999 WL 744430 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

meaning depends." ' *Id.* (quoting *Holland v. Hannan,* D.C.App., 456 A.2d 807, 815 (1983)). Courts will not torture contractual terms to create an ambiguity. *Rhone-Poulenc,* 616 A.2d at 1196. In determining the meaning of a contract, "[t]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* If a contract is deemed ambiguous, extrinsic evidence is admissible to help determine the proper construction of the contract. *Eagle Industries v. DeVilbiss Health Care,* Del.Supr., 702 A.2d 1228, 1232 (1997).

This policy is ambiguous and falls painfully short of placing a reasonable insured on notice that the premium rates would drastically increase if the policy's rate of return faltered. Although the language of the policy, when read closely, may lead to the "inference" that the premiums may rise, it is certainly not so clear as to place an individual on notice that representations made by the insurer's sales agent regarding policy performance should be completely ignored. The fact that the premiums on this policy may substantially increase is of *critical importance,* and to obscure this fact under pages of policy ink, as opposed to making it crystal clear, leads this Court to the conclusion that the representations made by the insurer's sales agents are relevant when construing the true terms of this policy. This Court is not, however, inclined to construe the contract at this time, that is, on the Defendant's Motion to Dismiss. The Court simply feels that illustrations and representations made by agents of the insurer are relevant to that construction. Because these alleged representations specify that premiums would not rise, and this representation may be utilized in construing the contract, Plaintiff has pleaded facts sufficient to paint a colorable claim for breach of contract. Accordingly, Defendant's Motion to Dismiss with respect to Count II (breach of contract) is DENIED. IT IS SO ORDERED.

### C. Consumer Fraud-Count III

**\*6** The Complaint alleges that DelAm committed consumer fraud when it utilized deceptive sales practices, and omitted material facts, to foster the mistaken belief that its premiums would remain the same throughout the life of the policy. DelAm's counter is two fold. First, it argues that the Consumer Fraud Act does not apply to the insurance industry.[FN5] Second, it asserts that expressions of future performance are merely opinions, and not subject to the Consumer Fraud Act.

> FN5. As noted in footnote 1, *supra,* the Complaint appears (perhaps with modest modification) sufficient in its factual allegations to set forth a cause of action in common law fraud and, if for any reason the statutory fraud count failed as a matter of law, the Court would be inclined to permit the case to proceed on a common law basis, including any required or desirable amendment to the pleadings.

The Consumer Fraud Act, 6 *Del. C.* § 2513, states that:
(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

(b) This section shall not apply:

(3) To matters subject to the jurisdiction of the Public Service Commission, or of the Insurance Commissioner of this State.

This Act is to be liberally construed to promote the underlying purpose of protecting consumers. 6 *Del. C.* § 2512.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                      Page 6

Not Reported in A.2d, 1999 WL 744430 (Del.Super.)
(Cite as: Not Reported in A.2d)

1. The Preemptive Effect of the Insurance Code

A consumer may bring a private cause of action under the Consumer Fraud Act against an insurance company, notwithstanding Section 2513(b)(3). *Grand Ventures, Inc. v. Whaley,* Del.Super., 622 A.2d 655, 663 (1992), aff'd, 632 A.2d 63 (1993); *DiSimplico v. Equitable Variable Life Ins. Co.,* Del.Super., C.A. No. 85C-01-079, 1988 WL 15394, Babiarz, J. (Jan. 29, 1988). As the *DiSimplico* Court stated:

[T]he Delaware legislature, in authorizing the [Insurance] Commissioner to deal with unfair trade practices in the insurance industry, did not intend to preempt other methods of redressing unfair trade practices, including private party suits against insurance carriers. Rather, the Court believes that the provision evinces a legislative intent to provide an additional, supplementary means of controlling and eradicating misconduct by insurers. Read in conjunction with the purpose of the [Consumer Fraud] Act as articulated in 6 *Del. C.* § 2512, this Court concludes that plaintiff may maintain a private cause of action for fraud against [an insurer] pursuant to the [Consumer Fraud] Act.

*Id.* at *2 (footnote omitted).

The Unfair Trade Practices Act, 18 *Del. C.* § 2301 *et seq.,* grants the Insurance Commissioner the authority to regulate unfair practices in the insurance industry. This Act begins by enumerating actions which are deemed unfair methods of competition. 18 *Del. C.* § 2304. It then provides the Insurance Commissioner with the power to " examine and investigate" those participating in the insurance industry to ascertain whether those persons are utilizing unfair methods of competition. 18 *Del. C.* § 2306. If the Insurance Commissioner determines that a person is committing an unfair act, he or she may issue a cease and desist order and/or assess penalties and fines. 18 *Del. C.* §§ 2308, 2311 . The powers vested in the Commissioner were intended to be in addition to all other remedies available at law. 18 *Del. C.* §§ 2308(h), 2313. This Act does not permit a private cause of action. *Yardley v. U.S. Healthcare, Inc.,* Del.Super., 698 A.2d 979, 988 (1996), aff'd, 693 A.2d 1083 (1997).

*7 The Unfair Trade Practices Act is regulatory in nature, and grants only the State the power to enforce the act. The Unfair Trade Practices Act is also designed to supplement other remedies available at law, not displace them. These remedies would certainly include consumer fraud. Section 2513(b)(3) of the Consumer Fraud Act states that it does not apply to "matters subject to the jurisdiction of ... the Insurance Commissioner." In light of: (1) the Unfair Trade Practices Act's regulatory nature, (2) the absence of a private cause of action under the Unfair Trade Practices Act, (3) the Unfair Trade Practices Act's express statement that it does not intend to displace other remedies available at law, and (4) the Consumer Fraud Act's express statement that it be liberally construed, this Court holds that the only reasonable interpretation of Section 2513(b)(3) is that it only precludes the State from bringing a consumer fraud action against an insurance company; it does not preclude a private cause of action. *Grand Ventures,* 622 A.2d at 663. The Plaintiff in this action may therefore bring a private cause of action under the Consumer Fraud Act.

2. Expressions of Opinions

Although fraud generally arises from an overt misrepresentation, it may also occur through deliberate concealment of a material fact in the face of a duty to speak. *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149 (1987). A duty to speak can be created by a pre-existing relationship between the parties or a partial disclosure of facts that requires the disclosure of additional facts to prevent a misleading impression. *Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983). The "mere expressions of opinion as to probable future events cannot be deemed fraud or misrepresentation." *Biasotto v. Spreen,* Del.Super., C.A. No. 96C-04-030, 1997 WL 527956, Quillen, J. (July 30, 1997) Letter Op. at 12 (citing *Consolidated Fisheries Co. v. Consolidated Solubles Co.,* Del.Supr., 112 A.2d 30, 37 (1955)).

Whether or not DelAm's sales agents expressed " opinions" or outright misleading facts is a question of fact, and cannot be determined on a Motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                              Page 7

Not Reported in A.2d, 1999 WL 744430 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Dismiss. The facts alleged in the Complaint, if proven, could very well make out a case for consumer fraud. Accordingly, Defendant's Motion to Dismiss with respect to Count III (consumer fraud) is DENIED. IT IS SO ORDERED.

### D. Unfair Trade Practices Act

As stated earlier, the Unfair Trade Practices Act does not provide a private cause of action. *Yardley,* 698 A.2d at 988; *Moses v. State Farm Fire & Cas. Ins. Co.,* Del.Super., C.A. No. 90C-10-020, 1991 WL 269886, Lee, J. (Nov. 20, 1991). As Judge Lee stated in *Moses:*
The purpose of the [Unfair Trade Practices] Act was to regulate trade practices in the insurance industry, not to protect a specific class of persons. *See* 18 *Del. C.* § 2301(a). As such, the law is aimed at curbing unfair trade practices and not at providing a remedy for the class of persons which might be harmed by such acts.
*8 Nowhere in the Act is a class of specific complainants established. To the contrary, the Act provides for prosecution of its provisions by the Insurance Commissioner ("Commissioner"), omitting any reference to private actions. *See* 18 *Del.C.* § 2304, *et seq.*
The terms of the Act itself persuade that a private cause of action is impliedly, if not explicitly, not extended. The Act outlines proscribed practices in § 2303 through § 2305, and then, in § 2306, instills the Commissioner alone with the power to investigate wrongdoing under the Act.

*Id.* at 8-9. Accordingly, Plaintiff does not have standing to bring a claim under the Unfair Trade Practices Act and Defendant's Motion to Dismiss with respect to Count IV (unfair trade practices) is GRANTED. IT IS SO ORDERED.

### E. Statute of Limitations

The remaining two Counts are breach of contract (Count II) and consumer fraud (Count III). Defendant contends that because the alleged deception occurred in or around 1984, that these claims are barred by the statute of limitations.

Plaintiff asserts that the actual harm resulting from the deceptive sales practices did not accrue until August of 1998, when the Plaintiff was informed that he needed to substantially increase his premiums in order to maintain his policy's value.

A three-year statute of limitation under 10 *Del. C.* § 8106 governs breach of contract claims. "An action for breach of contract accrues at the time of the breach." *Ensminger v. Merritt Marine Construction, Inc.,* Del.Super., 597 A.2d 854, 856 (1988) (citing *Nardo v. Guido DeAscanis & Sons, Inc.,* Del.Super., 254 A.2d 254 (1969)). The gist of Plaintiff's breach of contract claim is that DelAm represented that so long as the Plaintiff paid $250 a month, he would retain $50,000 in benefits. This alleged contract was not breached until DelAm demanded more than $250 a month in 1998. The breach of contract claim is therefore timely.

A three-year statute of limitation under 10 *Del. C.* § 8106 also governs claims of fraud. The time of discovery rule provides that in certain cases, a cause of action does not accrue until a party has reason to know that he or she has a cause of action. *Pack & Process, Inc. v. Celotex Corp.* Del.Super., 503 A.2d 646, 650-51(1985). Therefore, the limitation period does not begin to run until the Plaintiff has reason to know that a wrong has been committed, provided the injuries are "inherently unknowable" and sustained by a "blamelessly ignorant" Plaintiff. *Kaufman v. C.L. McCabe & Sons, Inc.,* Del.Super., 603 A.2d 831, 835 (1992). It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to discovery. *Becker v. Hamada,* Del.Super., 455 A.2d 353, 356 (1982) (quoting *Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.,* Neb.Supr., 230 N.W.2d 87, 89-90 (1975)).

*9 The alleged fraud occurred when the DelAm sales agents solicited existing and potential customers. This occurred more than three years ago. The fraud alleged in the Complaint is that DelAm's sales agents represented that so long as the Plaintiff paid $250 a month, the Plaintiff's coverage would remain at $50,000. This Court has already

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 8

Not Reported in A.2d, 1999 WL 744430 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

determined that a reasonable person may not have
been placed on notice that the insurance policy was
market dependent because the policy language is
not clear. Whether the Plaintiff should have been
aware, by reading the policy, that premiums may
drastically increase, is a question of fact that cannot
be determined on a Motion to Dismiss.
Accordingly, as to both the contract count and the
fraud count, Defendant's Motion to Dismiss the
Complaint as barred by the statute of limitations is
DENIED. IT IS SO ORDERED.


### F. Class Action Certification

Having determined that the Plaintiff has stated
colorable causes of action, the next issue is whether
this action should be certified as a class action
under Superior Court Civil Rule 23(b)(3). The
Court requests that both parties address this issue
shortly after the Defendant files its Answer. *See*
Superior Court Civil Rule 23(c).


Del.Super.,1999.
Mentis v. Delaware American Life Ins. Co.
Not Reported in A.2d, 1999 WL 744430
(Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, undersigned counsel of record, hereby certify that on May 15, 2006, I caused a copy of the foregoing Defendant MetLife, Inc.'s Motion to Dismiss and Opening Brief in Support of Its Motion to Dismiss to be served on the following counsel in the indicated manner:

CM/ECF Filing

David E. Wilks, Esquire
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE  19801

/s/ Paul A. Bradley
Paul A. Bradley (DE ID. No. 2156)

MEI\5651044.1