# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARK BONK, as trustee of the Harry and  )
Patricia Bonk Irrevocable Trust,  )
HARRY BONK and PATRICIA BONK,  )
     )
     Plaintiffs,  )     C. A. No. 06-285 (KAJ)
     )
     v.  )
     )
RICHARD WEZNER, JOHN HANCOCK  )
MUTUAL LIFE INSURANCE CO. and  )
METLIFE, INC.,  )
     )
     Defendants.  )

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO METLIFE, INC.'S MOTION TO DISMISS

REED SMITH LLP
David E. Wilks (DE ID No. 2793)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Tel.:  (302) 778.7560
Fax:  (302) 778.7575
E-mail:  dwilks@reedsmith.com

Dated:  May 30, 2006

# <u>TABLE OF CONTENTS</u>

Table of Citations.................................................................................................................. iii

Nature and Stage of Proceedings ........................................................................................ 1

Summary of Argument ........................................................................................................ 2

Statement of Facts............................................................................................................... 4

Argument ............................................................................................................................. 6

     I.     The Standard Applied to Motions Under FRCP 12(b)(6).................................. 6

     II.    Dismissal of MetLife as an Improper Defendant is Inappropriate...................... 7

     III.   Dismissal of Plaintiffs' Claim for Breach of Fiduciary Duty is
            Inappropriate ..................................................................................................... 9

     IV.   The Complaint Alleges Facts Sufficient to Support a Cause of Action for
            Unjust Enrichment Against MetLife ................................................................ 10

   Conclusion     ........................................................................................................ 11

# TABLE OF AUTHORITIES

## *Cases*

*Burlington Coat Factory Securities Litigation, In re*,
　　114 F.3d 1410, 1429-30 (3d Cir. 1997)...............................................7

*Columbia Pictures Industries v. Redd Horne*,
　　749 F.2d 154, 161 (3d Cir. 1984) ......................................................7

*Conley v. Gibson*,
　　355 U.S. 41, 45-46 (1957) ................................................................7

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
　　954 F.2d 869, 871 (3d Cir. 1992) ......................................................6

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
　　425 U.S. 738, 746 (1976) ..................................................................7

*Morse v. Lower Merion School District*,
　　132 F.3d 902, 906 (3d Cir. 1997) ......................................................7

*O'Malley v. Boris*,
　　742 A.2d 845 (Del. 1999).................................................................10

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
　　38 F.3d 1380, 1391 (3d Cir. 1994) ....................................................7

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
　　998 F.2d 1192, 1196 (3d Cir. 1993) ..................................................6

*Pittsburgh, City of v. West Penn Power Co.*,
　　147 F.3d 256, 259 (3d Cir. 1998) ......................................................7

*Port Authority of N.Y. & N.J. v. Arcadian Corp.*,
　　189 F.3d 305 (3d Cir. 1999) ..............................................................6

*Ransom v. Marrazzo*,
　　848 F.2d 398, 401 (3d Cir. 1988) ......................................................7

*Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*,
　　872 A.2d 611, 625 (Del. Ch. 2005) ...................................................9

## *Statutes*

Federal Rules of Civil Procedure 8(a) ...........................................................11

Federal Rules of Civil Procedure 11 ............................................................................7

Federal Rules of Civil Procedure 12(b)(6)..................................................2, 6, 8,11

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

Plaintiffs filed this action in the Delaware Superior Court against Richard Wezner ("Wezner"), John Hancock Mutual Life Insurance Co. ("Hancock") and MetLife, Inc. ("MetLife"). Wezner is a resident of Pennsylvania. Hancock is a Massachusetts corporation. MetLife is a Delaware corporation. Therefore, at the time the complaint was filed, this court lacked diversity jurisdiction over this case.

On May 2, 2006, MetLife filed a notice of removal to this court. In an effort to establish diversity jurisdiction, MetLife alleged in its notice of removal that "the proper defendant" to these proceedings is Metropolitan Life Insurance Co., a New York corporation. Plaintiffs did not challenge removal, since Metropolitan Life Insurance Co., an entity plainly related to MetLife and on notice of these proceedings, had necessarily brought itself before this court.

MetLife, a party that destroys this court's diversity jurisdiction, has now filed a motion to dismiss. This is plaintiffs' answering brief in opposition to that motion.

## SUMMARY OF ARGUMENT

MetLife's motion requires the court to accept two premises:  (1) plaintiffs' allegation that defendant Richard Wezner was employed by MetLife is factually incorrect; and (2) plaintiffs' claims should therefore be dismissed.  MetLife has, however, brought this motion under FRCP 12(b)(6).  Accordingly, a dispute of fact cannot form the basis of dismissal.  Indeed, MetLife supports its factual argument with nothing more than unverified facts set forth in its own notice of removal to this court.  Plaintiffs, on the other hand, have included in their complaint, a copy of which is attached as Exhibit A, factual allegations based upon their good faith investigation and defendants' own documents, which establish that Wezner was in fact employed by MetLife.  Those documents will, of course, be exchanged in discovery.  The complaint accordingly asserts that MetLife is liable under, *inter alia*, the doctrine of *respondeat superior.*  Plaintiffs' allegations must be accepted as true for the purposes of MetLife's motion and plaintiffs respectfully request that the court deny it in all respects.

Moreover, even if MetLife's factual assertions were correct, dismissal is the inappropriate remedy since "the proper defendant" is quite obviously on notice of the pendency of this action and has come forward to defend by removing this action.  MetLife, as a Delaware corporation, could not remove this action from the Delaware Superior Court since its presence in the case destroys this court's diversity jurisdiction.  MetLife did, however, file a notice of removal asserting that its sister company, Metropolitan Life Insurance Co., is "the proper defendant" and, as a New York corporation, may remove the action to this court.  If MetLife is not liable to plaintiffs, it should have filed its motion to dismiss in the Superior Court.  If Metropolitan Life Insurance Co. is capable of removing this case, it must necessarily be the proper defendant to answer plaintiffs' on the merits.  In either event, MetLife is ineligible to make any application to this court.

Moreover, dismissal is a wholly inappropriate remedy under these circumstances. If another member of the MetLife family of companies is technically the appropriate party to this case, amendment of the caption or complaint is the most appropriate means of rectifying this issue.

Finally, MetLife challenges plaintiffs' causes of action for breach of fiduciary duty and unjust enrichment. Delaware law, however, permits a claim for breach of fiduciary duty under the facts set forth in the complaint. In addition, the complaint contains facts sufficient to establish a claim for unjust enrichment. Plaintiffs therefore respectfully request that the court deny MetLife's motion to dismiss in all respects.

## STATEMENT OF FACTS

Plaintiffs Harry and Patricia Bonk are elderly individuals who chose to utilize life insurance to provide their future estates with cash sufficient to pay estate taxes on their significant real estate holdings.  See, Complaint at ¶ 8.  Wezner was the agent who originally sold the insurance policies to the Bonks.  *Id.*  Over the course of several years, Wezner engaged in a fraudulent scheme of replacing the insurance policies with other policies and purchasing and selling policies without the plaintiffs' knowledge and consent.  *Id.* at ¶¶12-18.  That scheme resulted in the Bonks losing valuable coverage, paying higher premiums than necessary and losing enormous built-up cash values in the policies without their knowledge and consent.  *Id.* at ¶ 19.

At the time that Wezner engaged in that scheme, he was employed by insurance companies that profited from his activities.  Until 1999, Wezner was employed by Hancock.  *Id.* at ¶ 8.  In 1999, Wezner became employed by MetLife which was doing business as Pennsylvania Business Group.  *Id.* at ¶¶ 3, 8.  Some of Wezner's fraudulent activities and plaintiffs' injuries occurred while he was a MetLife employee.  *Id.* at ¶¶ 12-15.  MetLife knowingly accepted the benefits conferred on it by the plaintiffs.  *Id.* at ¶¶ 36-38.

Plaintiffs brought this action in the Delaware Superior Court as the parties did not satisfy this court's diversity jurisdiction requirements.  Nevertheless, MetLife filed a notice of removal based upon the bald assertion that "the proper defendant" to these proceedings is a New York corporation called Metropolitan Life Insurance Co.  Plaintiffs did not challenge removal, because they are satisfied to litigate their claims on the merits in this court against the technically proper defendants.  MetLife has, however, now filed a motion to dismiss on the basis that it is not "the proper defendant."  It offers no support for that assertion other than its own unsupported notice

of removal, nor does it offer any basis for the court to ignore the well-pleaded facts set forth in the complaint establishing MetLife's liability.

## ARGUMENT

MetLife has blithely ignored the well-established standards applied to a motion to dismiss under FRCP 12(b)(6). Instead of identifying some fatal legal flaw in the claims asserted in the complaint, MetLife asserts an alternative factual scenario unsupported by documents or affidavits. In other words, MetLife asks the court simply and blindly to accept its factual assertions, reject plaintiffs' factual assertions and altogether dismiss it from this case. Plaintiffs suggest that such wishful thinking, while almost humorous in its optimism, serves no purpose other than to waste the court's time and the plaintiff's money.

MetLife also asserts that plaintiffs' claims for breach of fiduciary duty and unjust enrichment cannot survive a motion to dismiss. With respect to the fiduciary duty claim, MetLife fails to identify Delaware law which recognizes such a claim under the circumstances presented here. With respect to the unjust enrichment claim, MetLife once again simply ignores facts plainly set forth in the complaint which establish plaintiffs' *prima facie* case. Accordingly, plaintiffs respectfully request that the court deny MetLife's motion in all respects.

## I. THE STANDARD APPLIED TO MOTIONS UNDER FRCP 12(b)(6).

A motion brought under FRCP 12(b)(6) tests the sufficiency of the allegations made in the complaint. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992). The purpose of the rule is to allow the court to dismiss suits that are fatally flawed in their legal foundations, where no remedy exists for the wrong alleged or where no relief could possibly be granted. *Port Authority of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305 (3d Cir. 1999). In deciding a Rule 12(b)(6) motion, the court may consider the factual allegations in the complaint, exhibits attached to the complaint, matters of public record and undisputedly authentic documents submitted by a defendant relating to the plaintiff's claims. *Pension Benefit*

*Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993);

*accord, City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). The

court, however, must view the complaint in the light most favorable to the plaintiff and resolve

all doubts and inferences in plaintiff's favor. *Morse v. Lower Merion School District*, 132 F.3d

902, 906 (3d Cir. 1997); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410,

1429-30 (3d Cir. 1997); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988) (The question is

whether "the facts alleged in the complaint, even if true, fail to support the … claim.")

A complaint should be dismissed for failure to state a claim only where the "plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley v.

Gibson*, 355 U.S. 41, 45-46 (1957); *see also, Columbia Pictures Industries v. Redd Horne*, 749

F.2d 154, 161 (3d Cir. 1984) (quoting *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738,

746 (1976)). Only when no set of facts could be proven that would guarantee a right to relief,

may a court dismiss a complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380,

1391 (3d Cir. 1994).

## II.    DISMISSAL OF METLIFE AS AN IMPROPER DEFENDANT IS INAPPROPRIATE.

The complaint plainly alleges that Wezner was employed by MetLife beginning in 1999.

It also plainly alleges that during his employment with MetLife, Wezner perpetrated fraud

involving the sale, purchase and replacement of life insurance policies. It also plainly alleges

that MetLife benefited from Wezner's activities. It also plainly asserts a claim against MetLife

for *respondeat superior* as a result of Wezner's employment with MetLife. Those factual

assertions were made based upon plaintiffs' good faith belief and in keeping with plaintiffs'

counsel's obligations under FRCP 11.

MetLife simply asks the court to ignore those facts and adopt its own alternative assertion

that MetLife is not "the proper defendant." It supports that assertion with nothing more than its own notice of removal, the propriety of which is discussed below. MetLife has offered no authority for the proposition that facts asserted in a notice of removal are afforded greater credence under FRCP 12(b)(6) than those alleged in a complaint.[1] Discovery in this matter will permit the parties to exchange the documents and information upon which they base their contentions. Resolution of this fact-intensive question at this stage of the proceedings is contrary to the Rule 12 standard and is therefore inappropriate.

In the event that plaintiffs have in fact misnamed the appropriate MetLife entity that bears liability here, that error (which discovery will establish to be the product of MetLife's own representations) may be remedied by the simple amendment of the caption or of the complaint. MetLife has identified no prejudice that any member of its corporate family would suffer if such a simple procedural maneuver were accomplished.

Finally, MetLife's own tactics in this matter renders its motion to dismiss entirely inappropriate. MetLife's notice of removal served as a means of litigating in this court by offering up its sister entity as "the proper defendant." Acknowledging that its participation in these proceedings would destroy the very diversity jurisdiction it sought to create, MetLife nevertheless seeks dismissal from this case since it is not "the proper defendant." In other words, MetLife took itself out of the game and replaced itself with Metropolitan Life Insurance Co. It then walked back onto the field and asked that the game against its replacement be cancelled since it was ineligible to play in the first place.

Had MetLife wished to seek dismissal, it should have done so in the Superior Court. Instead, it offered up its sister entity as "the proper defendant." MetLife cannot now be heard to

---

[1] Indeed, were the court to consider any evidence outside the four corners of the complaint, MetLife's motion would be converted to a motion for summary judgment, a procedure which is patently premature at this stage of this case.

assert any defenses at all, much less ones that hinge on whether it is "the proper defendant."  In

sum, this court lacks jurisdiction to hear MetLife, since MetLife has, albeit in an awkward

fashion, substituted a sister entity for itself and removed this case to this court.  Accordingly,

MetLife's motion to dismiss should be dismissed in all respects.

### III.     DISMISSAL OF PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY IS INAPPROPRIATE.

MetLife asserts that Delaware law prohibits plaintiffs from pursuing a claim for breach of

fiduciary duty in the context of the sale or purchase of insurance contracts under any

circumstances.  While MetLife has identified authority which supports its argument, it has

ignored other authority which supports plaintiffs' theory here.  Plaintiffs therefore respectfully

submit that dismissal of their fiduciary duty claims at this stage would be wholly inappropriate.

Though MetLife cites *Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*, 872 A.2d 611,

625 (Del. Ch. 2005) for a rule that fiduciary duties should not be applied in the insurance

context, the court in that case actually recognized that the relationships at issue in such cases can

in fact take on the attributes of fiduciary duties.  *Id.* at 627.  Since the plaintiff in that case was a

highly sophisticated corporate enterprise which had consulted its own financial and legal

advisors in the course of the insurance sale transaction at issue, the court declined to impose a

fiduciary duty upon the insurance broker defendants.  Those facts are not, of course, present in

this case.  The individual plaintiffs are elderly individuals upon whom MetLife's employee

exerted substantial influence, dominion and control.  *See* complaint at ¶ 44.  The individual

plaintiffs relied upon Wezner's misrepresentations to their detriment.  *Id.* at ¶¶ 24-25, 32-33.

Moreover, the complaint asserts that MetLife's employee actually purchased policies of

insurance without the plaintiffs' knowledge and engaged in other self-dealing.  *Id.* at ¶¶ 12-19.

The result in *Wal-Mart Stores* is therefore inapplicable to this case and MetLife's motion to

dismiss should be denied.

Since the complaint alleges facts which demonstrate that MetLife's employee exerted such overwhelming control over plaintiffs' affairs as to purchase and sell life insurance policies without their knowledge or consent, MetLife's relationship with the plaintiffs closely resembled that between a customer and stock broker in which the broker has a duty to carry out the customer's instructions promptly and accurately. *O'Malley v. Boris*, 742 A.2d 845 (Del. 1999). The Delaware Supreme Court described the broker's obligations as "fiduciary duties of good faith, fair dealing, and loyalty." *Id.* at 849. Given the nature and scope of the relationship between the parties here as described in the complaint and the scope of MetLife's employee's misconduct and exertion of control, dismissal of plaintiffs' claim for breach of fiduciary duty is inappropriate.

### IV. THE COMPLAINT ALLEGES FACTS SUFFICIENT TO SUPPORT A CAUSE OF ACTION FOR UNJUST ENRICHMENT AGAINST METLIFE.

MetLife has identified the five elements of a cause of action for unjust enrichment as: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy at law. MetLife completely ignores, however, the plain allegations contained in the complaint which establish each of those elements.

The complaint states that Wezner committed fraud against the plaintiffs while he was employed by MetLife. The result of that fraud was, *inter alia*, that plaintiffs paid higher premiums and lost large sums in built-up cash values. The complaint also alleges that plaintiffs have lost valuable benefits held in the policies they originally held before the onset of Wezner's fraudulent schemes. Those allegations at the very least establish the inference that Wezner's insurance company employer was enriched by Wezner's insurance sales to the plaintiffs, that the

plaintiffs have been impoverished and that the enrichment and impoverishment were related. Plaintiffs can scarcely imagine a manner in which they could have more plainly satisfied those first three elements of their claim for unjust enrichment.

To its credit, MetLife does not suggest that plaintiffs have failed to establish the absence of justification for Wezner's activities performed during his employment with MetLife. The complaint's effective establishment that no justification could exist is self-evident.

Finally, MetLife suggests that since the complaint alleges causes of action which seek a legal remedy, the equitable remedy of unjust enrichment should be dismissed. FRCP 8(a) states, however, "Relief in the alternative or of several different types may be demanded." MetLife ignores that fundamental and longstanding tenet of federal pleading in its motion to dismiss.

The complaint has therefore fully established each of the five elements of a cause of action for unjust enrichment. Accordingly, plaintiffs respectfully request that the court deny MetLife's motion to dismiss in all respects.

## CONCLUSION

The standard applied to a motion under FRCP 12(b)(6) requires the court to accept the facts alleged in the complaint and the reasonable inferences to be drawn therefrom. Since MetLife's motion to dismiss merely requests the court to accept its own alternative set of facts, it is a wasteful exercise and dismissal is entirely inappropriate. Moreover, MetLife's own unusual procedural choices render MetLife ineligible to raise an application to the court. Regardless, even if MetLife's version of the facts is accurate and MetLife is entitled to raise its motion, dismissal is the inappropriate remedy to employ where a simple amendment of the caption or complaint accomplishes the proper result.

Finally, Delaware law is at best for MetLife unclear on whether a cause of action for

breach of fiduciary duty lies against an insurer and its agents or employees.  Plaintiffs

respectfully submit that the facts and circumstances alleged in the complaint amply establish that

a fiduciary relationship existed between the parties.  Dismissal of that claim on the limited record

before the court would therefore be improvident.  Similarly, the complaint alleges all the facts

necessary to establish plaintiffs' claim for unjust enrichment.  Plaintiffs respectfully request,

therefore, that the court deny MetLife's motion to dismiss in all respects.


                               Respectfully submitted,

                               REED SMITH LLP


                               */s/ David E. Wilks*
                               David E. Wilks (DE ID No. 2793)
                               1201 Market Street, Suite 1500
                               Wilmington, DE 19801
                               Tel.:  (302) 778.7560
                               Fax:  (302) 778.7575
                               E-mail:  dwilks@reedsmith.com


Dated: Wilmington, Delaware
         May 30, 2006

# EXHIBIT A

EFiled: Mar 9 2006 3:37P[...]
Transaction ID 10757856

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | Civil Action No. **06C-03-JOH** |
| Plaintiffs, | ) ) | **TRIAL BY JURY OF 12 DEMANDED** |
| v. | ) ) | **NON-ARBITRATION CASE** |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC. | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Mark Bonk, as trustee of Harry Bonk and Patricia Bonk Irrevocable Trust (the "Bonk Trust"), Harry Bonk and Patricia Bonk, by and through their undersigned attorneys, hereby bring this Complaint against defendants Richard Wezner ("Wezner"), John Hancock Mutual Life Insurance Co. ("Hancock") and MetLife, Inc. ("MetLife"). In support of their claims, plaintiffs allege as follows:

### Parties

1.     Plaintiff Mark Bonk is an individual residing at 34688 Doe Run, Lewes, Delaware 19958. For purposes of this action, Mark Bonk is the trustee of the Harry Bonk and Patricia Bonk Irrevocable Trust.

2.     Plaintiffs Harry Bonk and Patricia Bonk are individuals residing at 148 Kingsbridge Drive, Rehoboth Beach, DE 19971.

3.      Defendant Richard Wezner, upon information and belief, is an individual residing in the Commonwealth of Pennsylvania.  Upon information and belief, Wezner was employed by MetLife, Inc. d/b/a Pennsylvania Business Group in its offices located at 450 Plymouth Road, Suite 100, Plymouth Meeting, PA 19462.  By reason of his conduct described herein, as well as his regular business activity involving services and goods provided in Delaware, Wezner is subject to the personal jurisdiction of this Court pursuant to 10 Del. C. § 3104.

4.      Defendant John Hancock Mutual Life Insurance Company is a foreign corporation with its principal place of business in Boston, Massachusetts.  Upon information and belief, Hancock is authorized to issue life insurance polices in the State of Delaware and maintains a current license to do so with the Insurance Commissioner of the State of Delaware. As such, service of process may be made upon Hancock by serving the Insurance Commissioner of the State of Delaware pursuant to 18 Del. C. § 525.

5.      Defendant MetLife, Inc. is a Delaware corporation with its principal place of business at 200 Park Avenue, New York, New York 10166.  MetLife's registered agent in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

### Factual Background

6.      In 1991, Harry and Patricia Bonk purchased two whole life insurance policies: (1)  a $5 million policy with Hancock, Policy No. 20014007 and (2) a $2 million policy with Cigna (together, the "Original Life Policies").

7.      In 1998, the Original Life Policies were transferred to the Bonk Trust.  From 1998 to the present, the Bonk Trust was and is both the owner and beneficiary of the various life insurance policies defined herein.

2

8.      The purchase of those policies was the result of the Bonks' desire to provide their future estate with cash sufficient to pay estate taxes on their significant real estate holdings. Wezner was the agent who originally sold the policies. Wezner was employed by Hancock until 1999 when he joined MetLife.

9.      In 1999, while employed by Hancock, Wezner convinced the Bonks to surrender the Original Life Policies and purchase two new policies:  (1) a $6,000,000 life policy with Lincoln National, policy No. 7100468; and (2) a $4,000,000 policy with West Coast Life, Policy No. Z6A3743355 (together, the "Replacement Life Policies").

10.      Ostensibly, the reason for the conversion form the Original Life Policies to the Replacement Life Policies was to save the Bonks $4,386.00 in annual premiums.  Wezner fraudulently concealed from the plaintiffs that the Original Life Policies' cash value would be applied to the premiums on the Replacement Life Policies.

11.      Despite Wezner's direct representations to the contrary, the premiums on the Original Life Policies extended the insurance coverage to age 100 while the premiums on the Replacement Life Policies would only cover the Bonks until age 85.  Through 2003, the Replacement Policies accumulated in excess of $360,000 in cash value.

12.      Between early 2002 and early 2003, Wezner again approached the Bonks regarding changes to their life insurance structure, fraudulently promising additional premium reductions.  In this proposed transaction, the Replacement Life Policies would be sold to AllSettled Co. and Aspen Trust with the resulting cash settlement to be used to fund two new policies (1) a $3 million policy with General America, issued May 9, 2002 and (2) a $4 million policy with General America issued July 15, 2003 (together, the "Current Life Policies").

3

13.     Wezner then arranged for the Bonks to enter into a Life Insurance Policy Purchase and Sale Agreement with All Settled and Consolidated National Funding, LLC (the "Sale Agreement"). Pursuant to the Sale Agreement, the Bonks and the Bonk Trust sold their rights to collect death (and other related) benefits in exchange for a one-time payment of $110,000.00. In exchange for that payment, the plaintiffs assigned all their rights under the Replacement Life Policies.

14.     Upon information and belief, the law firm of Wolfson & Grossman acted as the escrow agent on behalf of All Settled and Consolidated National Funding. Pursuant to the Sale Agreement and under instructions from All Settled, Wolfson & Grossman issued a check in the amount of $110,000, payable to Mark Bonk, in his capacity as trustee of the Harry and Patricia Bonk Irrevocable Trust. The letter, dated June 11, 2002, was sent to P.O. Box 869, Ambler, PA 19002. At no time did Mark Bonk provide such an address to any parties to the Sale Agreement. Upon information and belief, the P.O. Box in question was owned by Wezner for the purpose of receiving correspondence on behalf of the Bonks and the Bonk Trust and misappropriating the proceeds of the Replacement Life Policies.

15.     Despite Wezner's representations that the Current Life Policies would be issued in the face amounts of $4 million and $6 million, the actual face amounts were only $3 million and $4 million, respectively.

16.     At no point prior to the purchase of the Replacement Life Policies and the Current Policies did the Bonks (a) receive illustrations on the net effect of the transfers; (b) receive premium notices; or (c) receive the actual cash settlement from the sales of the policies.

17.     During the final transactions discussed above which led to the purchase of the Current Life Policies, Wezner, unbeknownst to the plaintiffs, used a portion of the proceeds from

4

the sale of the Replacement Life Policies to fund the purchase of a limited $1,500,000 policy only on the life of Patricia Bonk. The plaintiffs were never consulted regarding this purchase and never executed an agreement to purchase the policy. In fact, the plaintiffs had no need or desire to insure the life of Patricia Bonk separate and apart from the existing policies.

18.    Finally, the Current Life Policies show that the coverage contemplated thereunder would lapse in three (3) years after issuance if the proposed funding/premium levels were maintained. In truth, the built-up cash value of the policies was applied to the new policies without the Bonks' knowledge, creating the illusion of reduced premium obligations. At no time did Wezner disclose to plaintiffs that their built-up cash values in any of the policies were dissipated in any way. The Current Life Policies substantially differ from the Original Life Policies in other significant and materials respects.

19.    As a result of Wezner's fraudulent misconduct, plaintiffs have been deprived of, among other things, the benefit of the terms of the Original Life Policies and some or all of the cash value of all the policies.

## COUNT I

### (Fraud)

20.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

21.    To induce the Bonks to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining the same coverage levels as the Original Life Policies.

22.    Wezner made these representations with the intent that the plaintiffs rely upon them.

23.    Wezner's representations were knowingly false.

24.    The plaintiffs relied to their detriment upon Wezner's fraudulent misrepresentations when purchasing the Replacement and Current Life Policies. The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

25.    As a consequence of their reliance on Wezner's fraudulent misrepresentations, the plaintiffs suffered substantial damages. If the plaintiffs had known the truth of the matters misrepresented, they would not have purchased the Replacement or Current Life Policies and would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

26.    Wezner concealed the fact that his representations regarding the Replacement and Current Life Policies were fraudulent from the plaintiffs by making additional misrepresentations and knowingly false assurances regarding the benefits provided by the Replacement and Current Life Policies.

27.    Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT II

### (Negligent Misrepresentation)

28.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

29.    To induce the plaintiffs to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining comparable coverages.

30.    Wezner's representations were false and made without regard to Wezner's pecuniary duty to provide the plaintiffs with accurate information concerning the sale and purchase of the Replacement and Current Life Policies.

31.    In making the false representations, Wezner failed to exercise the requisite standard of care.

32.    The plaintiffs relied to their detriment upon Wezner's negligent misrepresentations when purchasing the Replacement and Current Life Policies. The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

33.    As a consequence of their reliance on Wezner's negligent misrepresentations, the plaintiffs suffered substantial damages. If the plaintiffs had known the truth of the matters misrepresented, they would not have purchased the Replacement or Current Life Policies and would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT III

### (Restitution For Unjust Enrichment)

34.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

7

35.     By paying Wezner substantial sums in commissions and premiums from the sale of the Replacement and Current Life Policies, the plaintiffs conferred a benefit upon Wezner, Hancock and MetLife.

36.     Wezner, Hancock and MetLife knowingly accepted the benefits conferred upon them by the plaintiffs.

37.     Under the circumstances, it would be inequitable for Wezner, Hancock and MetLife to retain the benefits conferred upon them by the plaintiffs without compensating the plaintiffs.

38.     Consequently, Wezner, Hancock and MetLife have been unjustly enriched at the plaintiffs' expense and the plaintiffs are entitled to recover in *quantum meruit* for the value of the benefit that the plaintiffs conferred upon Wezner, Hancock and MetLife.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT IV

### (Conversion)

39.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

40.     Using the plaintiffs' cash and property, Wezner purchased the $1,500,000 policy on the life of Patricia Bonk without the plaintiffs' knowledge or consent.

41.     Wezner's misappropriation constitutes a willful and wrongful exercise of dominion and control over the plaintiffs' property.

8

42.     Consequently, defendants are liable to the plaintiffs for the value of the funds misappropriated to purchase the policy on the life of Patricia Bonk.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT V

### (Breach of Fiduciary Duty)

43.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

44.     During the course of his relationship with the plaintiffs, Wezner exerted substantial influence, dominion and control over the plaintiffs' financial affairs.  In such a capacity, Wezner had the obligation to act in the plaintiffs' best interests and avoid self dealing.

45.     As a result of his fiduciary relationship with the plaintiffs, Wezner owed duties of loyalty, good faith and fair dealing in his dealings with the plaintiffs.

46.     By virtue of his rampant misrepresentations, fraud and considerable self dealings, Wezner breached his duties of loyalty, good faith and fair dealing.

47.     Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT VI

### (Vicarious Liability as to John Hancock Mutual Life Insurance Co.)

48.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

49.     Until 1999, Wezner was employed by Hancock for the purpose of selling life insurance policies and other products.

50.     When the conduct alleged herein occurred, Wezner was authorized by Hancock to sell life insurance policies, including the Replacement Life Policies.

51.     The sale of the Replacement Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with Hancock.

52.     Wezner's sale of the Replacement Life policies was actuated by the purpose to carry out his job duties and serve the needs of Hancock.

53.     As a result of Wezner's conduct occurring within his scope of employment with Hancock, Hancock is jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant John Hancock in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT VII

### (Vicarious Liability as to MetLife, Inc.)

54.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

10

55.    From 1999 onward, Wezner has been employed by MetLife for the purpose of selling life insurance policies and other financial products.

56.    When the conduct alleged herein occurred, Wezner was authorized by MetLife to sell life insurance policies, including the Current Life Policies.

57.    The sale of the Current Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with MetLife.

58.    Wezner's sale of the Current Life Policies was actuated by the purpose to carry out his job duties and serve the needs of MetLife.

59.    As a result of Wezner's conduct occurring within his scope of employment with MetLife, MetLife is jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant MetLife, Inc. in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT VIII

### (Declaratory Judgment)

60.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

61.    As a result of the misconduct set forth above and the failure of Hancock and MetLife to provide insurance coverage comparable to that provided by the Original Life Policies, the plaintiffs should be afforded the benefits of the Original Life Policies.

11

WHEREFORE, plaintiffs demand a declaration that Hancock and MetLife are required to

provide to plaintiffs policies of insurance bearing the same terms and benefits as the Original

Life Policies, together with costs and such other further relief as the Court deems just.

**BUCHANAN INGERSOLL PC**

*/s/ Thad J. Bracegirdle*
David E. Wilks (No. 2793)
Thad J. Bracegirdle (No. 3691)
Matthew B. McGuire (No. 4366)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, Delaware 19801
(302) 428-5500

Attorneys for Plaintiffs

Dated:  March 9, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MARK BONK, as trustee of the Harry and Patricia Bonk Irrevocable Trust, HARRY BONK, and PATRICIA BONK,** | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Civil Action No. 06-285** |
| **RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CP., and METLIFE, INC.,** | ) ) ) ) |
| **Defendants.** | ) ) |

### CERTIFICATE OF SERVICE

I, David E. Wilks, hereby certify that on the 30th day of May, 2006, I caused a true and correct copy of *Plaintiff's Answering Brief in Opposition to MetLife, Inc.'s Motion to Dismiss* to be served on the parties listed below, via electronic CM-ECF:

*Attorneys for Defendant Richard Wezner:*

Denise Seastone Kraft, Esquire
Edwards & Angell LLP
919 North Market Street, 14th Floor
Wilmington, DE 19899

*Attorneys for Defendant John Hancock Mutual Life Insurance CP:*

Joseph Grey, Esquire
Thomas G. Whalen, Jr., Esquire
Stevens & Lee P.C..
1105 North Market Street, Suite 700
Wilmington, DE 19801

*Attorneys for Defendant MetLife:*

Paul A. Bradley, Esquire
McCarter & English, LLP
919 North Market Street, Suite 1800
P. O. Box 111
Wilmington, DE 19899

Dated: May 30, 2006

/s/ David E. Wilks
David E. Wilks (DE ID 2793)