IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-285 |
| v. | ) ) | |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC., | ) ) ) ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT WITH CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1**

Plaintiffs, Mark Bonk, as trustee of the Harry and Patricia Bonk Irrevocable Trust, Harry Bonk and Patricia Bonk (collectively, "Plaintiffs") move the Court for an Order pursuant to Fed.R.Civ.P. 15 and D.Del.L.R. 15.1 granting Plaintiffs leave to file their First Amended Complaint seeking to (i) add Signator Investors, Inc. (a John Hancock Mutual Life Insurance Company subsidiary) as an additional named defendant in this action, (ii) substituting MetLife Securities, Inc. and Metropolitan Life Insurance Company for current defendant MetLife, Inc., and (iii) asserting additional claims of negligent supervision and/or failure to supervise against defendants to conform to the evidence developed to date through discovery. Pursuant to Local Rule 15.1, the proposed First Amended Complaint is attached hereto as Exhibit A, and an underlined copy indicating in what respects the proposed amendment differs from the original Complaint is attached as Exhibit B. In further support of this application, Plaintiffs aver the following:

1.      This action involves claims against Plaintiffs' life insurance agent, Richard Wezner, and the companies for which he transacted business, for injuries suffered by Plaintiffs as a direct result of Wezner's fraudulent activities. Plaintiffs Harry and Patricia Bonk are elderly individuals who chose to utilize life insurance to provide their future estates with cash sufficient to pay estate taxes on their significant real estate holdings. *See,* Complaint at ¶8. Wezner was the agent who originally sold the insurance policies to the Bonks. *Id.* Over the course of several years, Wezner engaged in a fraudulent scheme of replacing the insurance policies with other policies and purchasing and selling policies without the Bonks knowledge and consent. *Id.* at ¶12-18. That scheme resulted in Plaintiffs losing valuable coverage, paying higher premiums than necessary and losing enormous built-up cash values in the policies – again, all without Plaintiffs' knowledge and consent. *Id.* at 19.

2.      During the course of Wezner's fraudulent scheme, he was first a registered representative with defendant John Hancock Mutual Life Insurance Company ("Hancock") and then with a John Hancock subsidiary, Signator Investors, Inc. ("Signator"). Given Wezner's affiliations with Hancock and Signator, each had supervisory responsibilities over Wezner, and here, each failed in their duties, to the Plaintiffs' detriment. Thereafter, Wezner became employed by one, if not two, MetLife entities – Metropolitan Life Insurance Company ("MetLife") and MetLife Securities, Inc. ("MetLife Securities"). Again, Wezner's fraudulent activities occurred during the scope of his affiliations with Hancock, Signator, MetLife and MetLife Securities and each knowingly accepted the benefits conferred on it by Wezner, to the detriment of Plaintiffs.

3.    The Complaint was filed on March 9, 2006 in the Superior Court of the State of Delaware in and for New Castle County by Plaintiffs' prior counsel. Pursuant to the application of defendant MetLife, Inc., the action was removed to this Court on or about May 2, 2006.

4.    Following the removal, the case has traveled a somewhat difficult path involving a ten-month stay of discovery pending a lengthy review of the mental capacity of one defendant, the loss of the assigned judge, and a change in Plaintiffs' counsel. Recently, on October 3, 2007, the Court entered a Case Scheduling Stipulation and Order (the "Order"), setting an April 30, 2008 discovery cut-off date and a June 30, 2008 deadline for the filing of case dispositive motions. Under the Order, motions to add or amend the pleadings must be filed by October 12, 2007.

5.    Pursuant to Fed.R.Civ.P. 15, Plaintiffs are entitled to leave of Court to file an amended complaint at this stage of the proceedings for the following reasons: (a) leave of Court to amend a pleading should be freely given pursuant to court precedence and Federal Rule of Civil Procedure 15(a); (b) neither existing parties, nor the proposed new defendants will be prejudiced by the proposed amendments and (c) the proposed amendments seek to assert claims which have arisen during the course of discovery and as a direct result of the production of documents by certain defendants.

6.    Plaintiffs should be given leave to amend their Complaint pursuant to the liberal standard under Federal Rule of Civil Procedure 15(a). Although amendment may now only be accomplished by leave of court, that leave "shall be freely given when justice so requires". Federal Civ. Pro. 15(a); *Accord,* Miller Products Co., Inc. v. Veltek Associates, Inc., 218 F.R.D. 425 (D.Del. 2003) *citing* Foman v. Davis, 371 U.S. 178 (1962) and In re Burlington Court Factory Sec. Litig., 114 F.3d 1410 (3rd Cir. 1997). The Third Circuit has recognized that Rule 15

provides "a flexible 'basic policy statement' allowing courts freely to allow parties to amend their pleadings," Werner v. Werner, 267 F. 3rd 288, 293 (3rd Cir. 2001), to ensure that "a particular claim will be decided on the merits rather than on technicalities." Koken v. GPC Int'l, Inc., 443 F.Supp.2d 631, 633 (D.Del. 2006) *quoting* Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3rd Cir. 1990). Although a trial court has discretion to grant or deny a motion for leave to amend, "unless there is sufficient reasons to deny it", leave should be granted. Id. Sufficient reasons to deny amendment include "undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, failure to cure deficiencies in former amendments, and futility of amendment." Miller Products Co., 218 F.R.D. at 426. Here, justice requires that Plaintiffs be given an opportunity to assert *all* claims against *all* applicable defendants which benefited from Wezner's fraudulent activity and no "sufficient reasons" exist to deny the motion.

7.    In the case at bar, Plaintiffs seek leave to file their First Amended Complaint for the purpose of adding Signator and certain MetLife entities as additional party defendants to these proceedings and to assert claims for negligent supervision against these defendants. These amendments are the direct result of Plaintiffs review of documents produced by defendants during the course of discovery.

8.    As set forth *supra,* the Court has established a discovery cut-off date of April 30, 2008, nearly six (6) months away. Case dispositive motions are not due until June 30, 2008 and given the case is currently unassigned to a District Court judge, no trial date has been set. Accordingly, neither the existing defendants, nor any newly added defendant, will suffer any prejudice or hardship if the Court grants Plaintiffs leave to file the First Amended Complaint.

9.    Plaintiffs hereby waive their right to file an opening brief in support of this Motion pursuant to Local Rule 7.1.2(a).  Plaintiffs reserve their right to file a reply brief dependent upon what response, if any, is filed by any defendant to this Motion.

10.    Certification.  Counsel hereby states that pursuant to Local Rule 7.1.1, counsel for Plaintiffs made reasonable efforts to reach agreement with opposing counsel on the subject matter set forth herein, but no agreement between the parties was reached.

WHEREFORE, Plaintiffs respectfully request that this Motion be granted and they be permitted to file their First Amended Complaint.

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Patricia P. McGonigle

R. KARL HILL (DE2747)
khill@svglaw.com
PATRICIA P. MCGONIGLE (DE3126)
pmcgonigle@svglaw.com
222 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone (302) 888-0600
Facsimile (302) 888-0606
Attorneys for Plaintiffs

Dated:  October 12, 2007

## CERTIFICATE OF SERVICE

I, Patricia P. McGonigle, hereby certify that on this 12th day of October, 2007, I electronically filed the foregoing *Plaintiffs' Motion for Leave to File First Amended Complaint with Certification Pursuant to Local Rule 7.1.1* (the "Motion") with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record. Further, I caused a copy of the Motion to be served upon the following counsel via electronic mail:

William F. Taylor, Jr., Esquire
McCarter & English, LLP
919 N. Market Street, Suite 1800
Wilmington, DE 19899

Penelope M. Taylor, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Daniel P. Bennett, Esquire
Mintzer Sarowitz Zeris
   Ledva & Meyers, LLP
1220 N. Market Street, Suite 300
Wilmington, DE 19801

Joseph Grey, Esquire
Stevens & Lee, P.C.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

William J. Payne, Esquire
Stevens & Lee, PC
620 Freedom Business Center, Suite 200
PO Box 62330
King of Prussia, PA 19406

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Patricia P. McGonigle

PATRICIA P. MCGONIGLE (DE3126)
pmcgonigle@svglaw.com

61325 v1

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 06-285 |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO., SIGNATOR INVESTORS, INC. (f/k/a JOHN HANCOCK DISTRIBUTORS, INC.), METLIFE SECURITIES, INC., and METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT

Plaintiffs Mark Bonk, as trustee of Harry Bonk and Patricia Bonk Irrevocable Trust (the "Bonk Trust"), Harry Bonk and Patricia Bonk, by and through their undersigned attorneys, hereby bring this First Amended Complaint against defendants Richard Wezner ("Wezner"), John Hancock Mutual Life Insurance Co. ("Hancock"), Signator Investors, Inc. (f/k/a John Hancock Distributors, Inc.) ("Signator"),  MetLife Securities, Inc., ("MetLife Securities"), and Metropolitan Life Insurance Company ("MetLife").  In support of their claims, plaintiffs allege as follows:

### Parties

1.       Plaintiff Mark Bonk is an individual residing at 34688 Doe Run, Lewes, Delaware 19958.  For purposes of this action, Mark Bonk is the trustee of the Harry Bonk and Patricia Bonk Irrevocable Trust.

2.      Plaintiffs Harry Bonk and Patricia Bonk are individuals residing at 148 Kingsbridge, Drive, Rehoboth Beach, DE 19971.

3.      Defendant Richard Wezner, upon information and belief, is an individual residing in the Commonwealth of Pennsylvania. Upon information and belief, Wezner was employed by MetLife Securities and MetLife from on or about March, 1999 to April, 2005. By reason of his conduct described herein, as well as his regular business activity involving services and goods provided in Delaware, Wezner is subject to the personal jurisdiction of this Court pursuant to 10 Del. C. § 3104.

4.      Defendant John Hancock Mutual Life Insurance Company (n/k/a John Hancock Variable Life Insurance Company) is a foreign corporation with its principal place of business in Boston, Massachusetts. Upon information and belief, Hancock is authorized to issue life insurance policies in the State of Delaware and maintains a current license to do so with the Insurance Commissioner of the State of Delaware. As such, service of process may be made upon Hancock by serving the Insurance Commissioner of the State of Delaware pursuant to 18 Del. C. § 525.

5.      Defendant Signator Investors, Inc. (f/k/a John Hancock Distributors, Inc.) is, upon information and belief, a Delaware corporation with its principal place of business in Boston, Massachusetts. Signator's registered agent in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6.      Defendant MetLife Securities, Inc. is a Delaware corporation with its principal place of business in New York, New York. MetLife Securities' registered agent in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

7.    Defendant Metropolitan Life Insurance Company is a Delaware corporation with its principal place of business in New York, New York. MetLife's registered agent in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

### Factual Background

8.    In 1991, Harry and Patricia Bonk purchased two variable life insurance policies: (1) a $5 million policy with Hancock, Policy No. 20014007 and (2) a $2 million policy with Cigna (together, the "Original Life Policies").

9.    In 1998, the Original Life Policies were transferred to the Bonk Trust. From 1998 to the present, the Bonk Trust was and is both the owner and beneficiary of the various life insurance policies defined herein.

10.    The purchase of those policies was the result of the Bonks' desire to provide their future estate with cash sufficient to pay estate taxes on their significant real estate holdings. Wezner was the agent who originally sold the Original Life Policies.

11.    Wezner was a registered representative with Hancock and/or Signator beginning in or about April 1994 and continuing until February 26, 1999. In or around December 1996, Wezner's affiliation with Hancock and/or Signator changed to that of an independent broker. From January 1, 1997 through February 26, 1999, Wezner held a servicing agent role with Hancock and/or Signator on variable life insurance policies, including those held by the Bonks and the Bonk Trust.

12.    On or around January 1, 1997, Wezner listed with Hancock and/or Signator his home address at 408 Merion Avenue, Haddonfield, New Jersey 08033.

13.    On or about October 10, 1997 and then again on February 10, 1998, Wezner submitted address changes to Hancock and/or Signator for Hancock Policy No. 20014007 (one

of the Original Life Policies) listing Wezner's home address as the new owner's address. Hancock and/or Signator processed these address changes. At no time, despite internal requests for documentation, did Hancock and/or Signator secure a copy of the applicable trust documents or verify with the Trustee that Wezner's home address should be used for the policy.

14.    In 1998 or 1999, while a registered representative of Hancock and/or Signator, Wezner convinced the Bonks to surrender the Original Life Policies and purchase new policies, including:   (1) a $6,000,000 life policy with Lincoln National, policy No. 7100468; (2) a $4,000,000 policy with West Coast Life, Policy No. Z6A3743355, and (3) a $2,000,000 life policy with Hancock, Policy No. 20028718 (together, the "Replacement Life Policies").

15.    Ostensibly, the reason for the conversion from the Original Life Policies to the Replacement Life Policies was to save the Bonks $4,386.00 in annual premiums.   Wezner fraudulently concealed from the plaintiffs that the Original Life Policies' cash value would be applied to the premiums on the Replacement Life Policies.

16.    Despite Wezner's direct representations to the contrary, the premiums on the Original Life Policies extended the insurance coverage to age 100 while the premiums on the Replacement Life Policies would only cover the Bonks until age 85.   Through 2003, the Replacement Policies accumulated in excess of $360,000 in cash value.

17.    In early 2001, Wezner again approached the Bonks regarding changes to their life insurance structure, fraudulently promising additional premium reductions. Wezner fraudulently caused the surrender of Hancock Policy No. 20028718.  In furtherance of his fraudulent scheme, Wezner directed correspondence to Hancock, using Hancock letterhead, directing the suspension of all conservation efforts.  Upon information and belief, Hancock did not question Wezner's direction.

18.    Then, between early 2002 and early 2003, Wezner again approached the Bonks concerning changes to their life insurance structure, In this proposed transaction, the remaining Replacement Life Policies would be sold to AllSettled, Co. and Aspen Trust with the resulting cash settlement to be used to fund two new policies (1) a $3 million policy with General America, issued May 9, 2002 and (2) a $4 million policy with General America issued July 15, 2003 (together, the "Current Life Policies").

19.    Wezner then arranged for the Bonks to enter into a Life Insurance Policy Purchase and Sale Agreement with All Settled and Consolidated National Funding, LLC (the "Sale Agreement"). Pursuant to the Sale Agreement, the Bonks and the Bonk Trust sold their rights to collect death (and other related) benefits in exchange for a one-time payment of $110,000.00. In exchange for that payment, the plaintiffs assigned all their rights under the Replacement Life Policies.

20.    Upon information and belief, the law firm of Wolfson & Grossman acted as the escrow agent on behalf of All Settled and Consolidated National Funding. Pursuant to the Sale Agreement and under instructions from All Settled, Wolfson & Grossman issue a check in the amount of $110,000, payable to Mark Bonk, in his capacity as trustee of the Harry and Patricia Bonk Irrevocable Trust. The letter, dated June 11, 2002, was sent to P.O. Box 869, Ambler, PA 19002. At no time did Mark Bonk provide such an address to any parties to the Sale Agreement. Upon information and belief, the P.O. Box in question was owned by Wezner for the purpose of receiving correspondence on behalf of the Bonks and the Bonk Trust and misappropriating the proceeds of the Replacement Life Policies.

21.    Despite Wezner's representations that the Current Life Policies would be issued in face amounts of $4 million and $6 million, the actual face amounts were only $3 million and $4 million, respectively.

22.    At no point prior to the purchase of the Replacement Life Policies and the Current Policies did the Bonks (a) receive illustrations on the net effect of the transfers; (b) receive premium notices; or (c) receive the actual cash settlement from the sale of the policies.

23.    During the final transactions discussed above which led to the purchase of the Current Life Policies, Wezner, unbeknownst to the plaintiffs, used a portion of the proceeds from the sale of the Replacement Life Policies to fund the purchase of a limited $1,500,000 policy only on the life of Patricia Bonk.  The plaintiffs were never consulted regarding this purchase and never executed on agreement to purchase the policy.  In fact, the plaintiffs had no need or desire to insure the life of Patricia Bonk separate and apart from the existing policies.

24.    Finally, the Current Life Policies show that the coverage contemplated thereunder would lapse in three (3) years after issuance if the proposed funding/premium levels were maintained.  In truth, the built-up cash value of the policies was applied to the new policies without the Bonks' knowledge, creating the illusion of reduced premium obligations.  At no time did Wezner disclose to plaintiffs that their built-up cash values in any of the policies were dissipated in any way.  The Current Life Policies substantially differ from the Original Life Policies in other significant and materials respects.

25.    As a result of Wezner's fraudulent misconduct, plaintiffs have been deprived of, among other things, the benefit of the terms of the Original Life Policies and some or all of the cash value of all the policies.

## COUNT I
### (Fraud)

26.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

27.     To induce the Bonks to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining the same coverage levels as the Original Life Policies.

28.     Wezner made these representations with the intent that the plaintiffs rely upon them.

29.     Wezner's representations were knowingly false.

30.     The plaintiffs relied to their detriment upon Wezner's fraudulent misrepresentations when purchasing the Replacement and Current Life Policies. The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

31.     As a consequence of their reliance on Wezner's fraudulent misrepresentations, the plaintiffs suffered substantial damages. If the plaintiffs had known the truth of the matters misrepresented, they would not have purchased the Replacement or Current Life Policies and would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

32.     Wezner concealed the fact that his representations regarding the Replacement and Current Life Polices were fraudulent from the plaintiffs by making additional misrepresentations and knowingly false assurances regarding the benefits provided by the Replacement and Current Life Policies.

61318 v1

7

33.     Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT II
## (Negligent Misrepresentation)

34.     Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

35.     To induce the plaintiffs to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining comparable coverages.

36.     Wezner's representations were false and made without regard to Wezner's pecuniary duty to provide the plaintiffs with accurate information concerning the sale and purchase of the Replacement and Current Life Policies.

37.     In making the false representations, Wezner failed to exercise the requisite standard of care.

38.     The plaintiffs relied to their detriment upon Wezner's negligent misrepresentations when purchasing the Replacement and Current Life Policies. The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

39.     As a consequence of their reliance on Wezner's negligent misrepresentations, the plaintiffs suffered substantial damages. If the plaintiffs had known the truth of the matters misrepresented, they would not have purchased the Replacement or Current Life Policies and

would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT III
### (Restitution For Unjust Enrichment)

40.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

41.    By paying Wezner substantial sums in commissions and premiums from the sale of the Replacement and Current Life Policies, the plaintiffs conferred a benefit upon Wezner, Hancock, Signator, MetLife Securities and MetLife.

42.    Wezner, Hancock, Signator, MetLife Securities and MetLife knowingly accepted the benefits conferred upon them by the plaintiffs.

43.    Under the circumstances, it would be inequitable for Wezner, Hancock, Signator, MetLife Securities and MetLife to retain the benefits conferred upon them by the plaintiffs without compensating the plaintiffs.

44.    Consequently, Wezner, Hancock, Signator, MetLife Securities and MetLife have been unjustly enriched at the plaintiffs' expense and the plaintiffs are entitled to recover in *quantum meruit* for the value of the benefit that the plaintiffs conferred upon Wezner, Hancock Signator, MetLife Securities and MetLife.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with pre-judgment interest, costs and such other and further relief as the Court deems just.

## COUNT IV
### (Conversion)

45.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

46.    Using the plaintiffs' cash and property, Wezner purchased the $1,500,000 policy on the life of Patricia Bonk without the plaintiffs' knowledge or consent.

47.    Wezner's misappropriation constitutes a willful and wrongful exercise of dominion and control over the plaintiffs' property.

48.    Consequently, defendants are liable to the plaintiffs for the value of the funds misappropriated to purchase the policy on the life of Patricia Bonk.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trail, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT V
### (Breach of Fiduciary Duty)

49.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

950.    During the course of his relationship with the plaintiffs, Wezner exerted substantial influence, dominion and control over the plaintiffs' financial affairs.  In such a capacity, Wezner had the obligation to act in the plaintiffs' best interests and avoid self dealing.

51.    As a result of his fiduciary relationship with the plaintiffs, Wezner owed duties of loyalty, good faith and fair dealing in his dealings with the plaintiffs.

52.    By virtue of his rampant misrepresentations, fraud and considerable self dealings, Wezner breached his duties of loyalty, good faith and fair dealing.

53.    Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT VI
### (Vicarious Liability as to Hancock and Signator)

54.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

55.    Until 1999, Wezner was a registered representative of Hancock and/or Signator for the purpose of selling life insurance policies and other products.

56.    When the conduct alleged herein occurred, Wezner was authorized by Hancock and/or Signator to sell life insurance policies, including the Replacement Life Policies.

57.    The sale of the Replacement Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with Hancock and/or Signator.

58.    Wezner's sale of the Replacement Life policies was actuated by the purpose to carry out his duties and serve the needs of Hancock and/or Signator.

59.    As a result of Wezner's conduct occurring within his scope of his agency with Hancock and/or Signator, Hancock and/or Signator are jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant John Hancock in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

61318 v1

## COUNT VII
### (Vicarious Liability as to MetLife and MetLife Securities)

60.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

61.    From 1999 onward, Wezner has been employed by MetLife and/or MetLife Securities for the purpose of selling life insurance policies and other financial products.

62.    When the conduct alleged herein occurred, Wezner was authorized by MetLife and/or MetLife Securities to sell life insurance policies, including the Current Life Policies.

63.    The sale of the Current Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with MetLife and/or MetLife Securities.

64.    Wezner's sale of the Current Life Policies was actuated by the purpose to carry out his job duties and serve the needs of MetLife and/or MetLife Securities.

65.    As a result of Wezner's conduct occurring within his scope of employment with MetLife and/or MetLife Securities, MetLife and/or MetLife Securities are jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant MetLife, Inc. in an amount to be proven at trial, together with interest, costs and such other and further relief as the Court deems just.

## COUNT VIII
### (Declaratory Judgment)

66.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

67.    As a result of the misconduct set forth above and the failure of Hancock and MetLife to provide insurance coverage comparable to that provided by Original Life Policies, the plaintiffs should be afforded the benefits of the Original Life Policies.

WHEREFORE, plaintiffs demand a declaration that Hancock and MetLife are required to provide to plaintiffs policies of insurance bearing the same terms and benefits as the Original Life Policies, together with costs and such other further relief as the Court deems just.

## COUNT IX
### (Failure to Supervise and/or Negligent Supervision)

68.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

69.    During all relevant times, including while actively perpetrating his fraudulent scheme against the plaintiffs, Wezner was either a registered representative of Hancock and/or Signator or an employee of MetLife and/or MetLife Securities.

70.    During his tenure (April 1994 to February 26, 1999) as a registered representative of Hancock and/or Signator, Hancock and Signator had a general duty to supervise the actions and conduct of Wezner.

71.    During his tenure (February 20, 1999 to April 22, 2005) as an employee of MetLife and/or MetLife Securities, MetLife and/or MetLife Securities had a general duty to supervise the actions and conduct of Wezner.

72.    Hancock, Signator, MetLife and MetLife Securities breached this duty of supervision, and/or negligently performed such duty in that each failed, among other things,  to (i) ensure the suitability of the variable life policies sold to plaintiffs, (ii) failed to detect Wezner's fraudulent activities, including failing to question suspect address changes and changes to beneficiary designations, and (iii) verify trust information.

73.     Defendants' negligent supervision and/or breach of the duty to supervise Wezner
is a direct and proximate cause of the losses suffered by the plaintiffs.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an
amount to be proven at trial, together with interest, costs and such other and further relief as the
Court deems just.

SEITZ, VAN OGTROP & GREEN, P.A.


_____
R. KARL HILL (DE2747)
khill@svglaw.com
PATRICIA P. MCGONIGLE (DE3126)
pmcgonigle@svglaw.com
222 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone (302) 888-0600
Facsimile (302) 888-0606
Attorneys for Plaintiffs

Dated:  October __, 2007

61318 v1                                14

Exhibit "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and<br>and Patricia Bonk Irrevocable Trust,<br>HARRY BONK and PATRICIA BONK,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD WEZNER, JOHN HANCOCK<br>MUTUAL LIFE INSURANCE CO., and<br>SIGNATOR INVESTORS, INC. (f/k/a JOHN<br>HANCOCK DISTRIBUTORS, INC.), METLIFE<br>METLIFE SECURITIES, INC., and<br>METROPOLITAN LIFE INSURANCE<br>COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06-285 |

## **FIRST AMENDED COMPLAINT**

Plaintiffs Mark Bonk, as trustee of Harry Bonk and Patricia Bonk Irrevocable Trust (the "Bonk Trust"), Harry Bonk and Patricia Bonk, by and through their undersigned attorneys, hereby bring this First Amended Complaint against defendants Richard Wezner ("Wezner"), John Hancock Mutual Life Insurance Co. ("Hancock"), Signator Investors, Inc. (f/k/a John Hancock Distributors, Inc.) ("Signator"), and MetLife, Inc. MetLife Securities, Inc., ("MetLife Securities"), and Metropolitan Life Insurance Company ("MetLife"). In support of their claims, plaintiffs allege as follows:

### **Parties**

1.     Plaintiff Mark Bonk is an individual residing at 34688 Doe Run, Lewes, Delaware 19958. For purposes of this action, Mark Bonk is the trustee of the Harry Bonk and Patricia Bonk Irrevocable Trust.

2.      Plaintiffs Harry Bonk and Patricia Bonk are individuals residing at 148 Kingsbridge, Drive, Rehoboth Beach, DE 19971.

3.      Defendant Richard Wezner, upon information and belief, is an individual residing in the Commonwealth of Pennsylvania.  Upon information and belief, Wezner was employed by MetLife, ~~Inc. d/b/a Pennsylvania Business Group in its offices located at 450 Plymouth Road, Suite 100, Plymouth Meeting, PA 19462.~~ Securities and MetLife from on or about March, 1999 to April, 2005.  By reason of his conduct described herein, as well as his regular business activity involving services and goods provided in Delaware, Wezner is subject to the personal jurisdiction of this Court pursuant to 10 <u>Del. C.</u> § 3104.

4.      Defendant John Hancock Mutual Life Insurance Company <u>(n/k/a John Hancock Variable Life Insurance Company)</u> is a foreign corporation with its principal place of business in Boston, Massachusetts.   Upon information and belief, Hancock is authorized to issue life insurance policies in the State of Delaware and maintains a current license to do so with the Insurance Commissioner of the State of Delaware. As such, service of process may be made upon Hancock by serving the Insurance Commissioner of the State of Delaware pursuant to 18 <u>Del. C.</u> § 525.

<u>5.      Defendant Signator Investors, Inc. (f/k/a John Hancock Distributors, Inc.) is, upon information and belief, a Delaware corporation with its principal place of business in Boston, Massachusetts.  Signator's registered agent in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.</u>

~~5~~<u>6</u>.      Defendant MetLife <u>Securities</u>, Inc. is a <u>Delaware</u> corporation with its principal place of business <u>in</u> ~~at 200 Park Avenue,~~ New York, New York ~~10166~~.  MetLife <u>Securities'</u>~~'s~~

registered agent in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

7.     Defendant Metropolitan Life Insurance Company is a Delaware corporation with its principal place of business in New York, New York.  MetLife's registered agent in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

## **Factual Background**

8~6~.     In 1991, Harry and Patricia Bonk purchased two ~~whole~~ variable life insurance policies:  (1) a $5 million policy with Hancock, Policy No. 20014007 and (2) a $2 million policy with Cigna (together, the "Original Life Policies").

9~7~.     In 1998, the Original Life Policies were transferred to the Bonk Trust.  From 1998 to the present, the Bonk Trust was and is both the owner and beneficiary of the various life insurance policies defined herein.

8~10~.     The purchase of those policies was the result of the Bonks' desire to provide their future estate with cash sufficient to pay estate taxes on their significant real estate holdings. Wezner was the agent who originally sold the Original Life Ppolicies.  ~~Wezner was employed by Hancock until 1999 when he joined MetLife.~~

11.     Wezner was a registered representative with Hancock and/or Signator beginning in or about April 1994 and continuing until February 26, 1999.  In or around December 1996, Wezner's affiliation with Hancock and/or Signator changed to that of an independent broker. From January 1, 1997 through February 26, 1999, Wezner held a servicing agent role with Hancock and/or Signator on variable life insurance policies, including those held by the Bonks and the Bonk Trust.

12.    On or around January 1, 1997, Wezner listed with Hancock and/or Signator his home address at 408 Merion Avenue, Haddonfield, New Jersey 08033.

13.    On or about October 10, 1997 and then again on February 10, 1998, Wezner submitted address changes to Hancock and/or Signator for Hancock Policy No. 20014007 (one of the Original Life Policies) listing Wezner's home address as the new owner's address. Hancock and/or Signator processed these address changes. At no time, despite internal requests for documentation, did Hancock and/or Signator secure a copy of the applicable trust documents or verify with the Trustee that Wezner's home address should be used for the policy.

149.    In 1998 or 1999, while a registered representative of Hancock and/or Signator employed by Hancock, Wezner convinced the Bonks to surrender the Original Life Policies and purchase two new policies, including: (1) a $6,000,000 life policy with Lincoln National, policy No. 7100468; and (2) a $4,000,000 policy with West Coast Life, Policy No. Z6A3743355, and (3) a $2,000,000 life policy with Hancock, Policy No. 20028718 (together, the "Replacement Life Policies").

105.    Ostensibly, the reason for the conversion from the Original Life Policies to the Replacement Life Policies was to save the Bonks $4,386.00 in annual premiums. Wezner fraudulently concealed from the plaintiffs that the Original Life Policies' cash value would be applied to the premiums on the Replacement Life Policies.

161.    Despite Wezner's direct representations to the contrary, the premiums on the Original Life Policies extended the insurance coverage to age 100 while the premiums on the Replacement Life Policies would only cover the Bonks until age 85. Through 2003, the Replacement Policies accumulated in excess of $360,000 in cash value.

17~~2~~.    In early 2001, ~~Between early 2002 and early 2003,~~ Wezner again approached the Bonks regarding changes to their life insurance structure, fraudulently promising additional premium reductions.  Wezner fraudulently caused the surrender of Hancock Policy No. 20028718.  In furtherance of his fraudulent scheme, Wezner directed correspondence to Hancock, using Hancock letterhead, directing the suspension of all conservation efforts.  Upon information and belief, Hancock did not question Wezner's direction.

18.    Then, between early 2002 and early 2003, Wezner again approached the Bonks concerning changes to their life insurance structure, In this proposed transaction, the remaining Replacement Life Policies would be sold to AllSettled, Co. and Aspen Trust with the resulting cash settlement to be used to fund two new policies (1) a $3 million policy with General America, issued May 9, 2002 and (2) a $4 million policy with General America issued July 15, 2003 (together, the "Current Life Policies").

19~~3~~.    Wezner then arranged for the Bonks to enter into a Life Insurance Policy Purchase and Sale Agreement with All Settled and Consolidated National Funding, LLC (the "Sale Agreement").  Pursuant to the Sale Agreement, the Bonks and the Bonk Trust sold their rights to collect death (and other related) benefits in exchange for a one-time payment of $110,000.00.  In exchange for that payment, the plaintiffs assigned all their rights under the Replacement Life Policies.

~~14~~20.    Upon information and belief, the law firm of Wolfson & Grossman acted as the escrow agent on behalf of All Settled and Consolidated National Funding.  Pursuant to the Sale Agreement and under instructions from All Settled, Wolfson & Grossman issue a check in the amount of $110,000, payable to Mark Bonk, in his capacity as trustee of the Harry and Patricia Bonk Irrevocable Trust.  The letter, dated June 11, 2002, was sent to P.O. Box 869, Ambler, PA

19002. At no time did Mark Bonk provide such an address to any parties to the Sale Agreement. Upon information and belief, the P.O. Box in question was owned by Wezner for the purpose of receiving correspondence on behalf of the Bonks and the Bonk Trust and misappropriating the proceeds of the Replacement Life Policies.

~~15~~21. Despite Wezner's representations that the Current Life Policies would be issued in face amounts of $4 million and $6 million, the actual face amounts were only $3 million and $4 million, respectively.

22~~16~~. At no point prior to the purchase of the Replacement Life Policies and the Current Policies did the Bonks (a) receive illustrations on the net effect of the transfers; (b) receive premium notices; or (c) receive the actual cash settlement from the sale of the policies.

23~~17~~. During the final transactions discussed above which led to the purchase of the Current Life Policies, Wezner, unbeknownst to the plaintiffs, used a portion of the proceeds from the sale of the Replacement Life Policies to fund the purchase of a limited $1,500,000 policy only on the life of Patricia Bonk. The plaintiffs were never consulted regarding this purchase and never executed on agreement to purchase the policy. In fact, the plaintiffs had no need or desire to insure the life of Patricia Bonk separate and apart from the existing policies.

~~18~~24. Finally, the Current Life Policies show that the coverage contemplated thereunder would lapse in three (3) years after issuance if the proposed funding/premium levels were maintained. In truth, the built-up cash value of the policies was applied to the new policies without the Bonks' knowledge, creating the illusion of reduced premium obligations. At no time did Wezner disclose to plaintiffs that their built-up cash values in any of the policies were dissipated in any way. The Current Life Policies substantially differ from the Original Life Policies in other significant and materials respects.

~~19~~25.  As a result of Wezner's fraudulent misconduct, plaintiffs have been deprived of, among other things, the benefit of the terms of the Original Life Policies and some or all of the cash value of all the policies.

### COUNT I
### (Fraud)

2~~0~~6.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

27~~1~~.    To induce the Bonks to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining the same coverage levels as the Original Life Policies.

2~~2~~8.    Wezner made these representations with the intent that the plaintiffs rely upon them.

2~~3~~9.    Wezner's representations were knowingly false.

~~24~~30. The plaintiffs relied    to    their    detriment    upon    Wezner's    fraudulent misrepresentations when purchasing the Replacement and Current Life Policies.  The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

31~~25~~.  As a consequence of their reliance on Wezner's fraudulent misrepresentations, the plaintiffs suffered substantial damages.  If the plaintiffs had known the truth of the matters misrepresented, they would not have purchased the Replacement or Current Life Policies and would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

32~~26~~.  Wezner concealed the fact that his representations regarding the Replacement and Current Life Polices were fraudulent from the plaintiffs by making additional misrepresentations

and knowingly false assurances regarding the benefits provided by the Replacement and Current Life Policies.

27 33. Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT II
### (Negligent Misrepresentation)

28 34. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

35 29. To induce the plaintiffs to purchase the Replacement and Current Life Policies, Wezner represented that the sale of the policies and purchase of new policies would result in reduced premium payments while maintaining comparable coverages.

30 6. Wezner's representations were false and made without regard to Wezner's pecuniary duty to provide the plaintiffs with accurate information concerning the sale and purchase of the Replacement and Current Life Policies.

31 7. In making the false representations, Wezner failed to exercise the requisite standard of care.

32 8. The plaintiffs relied to their detriment upon Wezner's negligent misrepresentations when purchasing the Replacement and Current Life Policies. The plaintiffs' reliance on these fraudulent misrepresentations was reasonable.

33 9. As a consequence of their reliance on Wezner's negligent misrepresentations, the plaintiffs suffered substantial damages. If the plaintiffs had known the truth of the matters

misrepresented, they would not have purchased the Replacement or Current Life Policies and would not have forfeited the favorable terms of and substantial cash value remaining in the Original Life Policies.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT III
### (Restitution For Unjust Enrichment)

~~34~~40.  Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

41~~35~~.  By paying Wezner substantial sums in commissions and premiums from the sale of the Replacement and Current Life Policies, the plaintiffs conferred a benefit upon Wezner, Hancock, Signator, MetLife Securities and MetLife.

42~~36~~.  Wezner, Hancock, Signator, MetLife Securities and MetLife knowingly accepted the benefits conferred upon them by the plaintiffs.

~~37~~43.  Under the circumstances, it would be inequitable for Wezner, Hancock, Signator, MetLife Securities and MetLife to retain the benefits conferred upon them by the plaintiffs without compensating the plaintiffs.

~~38~~44.  Consequently, Wezner, Hancock, Signator, MetLife Securities and MetLife have been unjustly enriched at the plaintiffs' expense and the plaintiffs are entitled to recover in *quantum meruit* for the value of the benefit that the plaintiffs conferred upon Wezner, Hancock Signator, MetLife Securities and MetLife.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with pre-judgment interest, costs and such other and further relief as the Court deems just.

## COUNT IV
## (Conversion)

45~~39~~.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

46~~0~~.    Using the plaintiffs' cash and property, Wezner purchased the $1,500,000 policy on the life of Patricia Bonk without the plaintiffs' knowledge or consent.

47~~1~~.    Wezner's misappropriation constitutes a willful and wrongful exercise of dominion and control over the plaintiffs' property.

4~~2~~8.    Consequently, defendants are liable to the plaintiffs for the value of the funds misappropriated to purchase the policy on the life of Patricia Bonk.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trail, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT V
## (Breach of Fiduciary Duty)

49~~3~~.    Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

4~~9~~450. During the course of his relationship with the plaintiffs, Wezner exerted substantial influence, dominion and control over the plaintiffs' financial affairs.   In such a capacity, Wezner had the obligation to act in the plaintiffs' best interests and avoid self dealing.

61318 v1                                   10

45~~51~~.  As a result of his fiduciary relationship with the plaintiffs, Wezner owed duties of loyalty, good faith and fair dealing in his dealings with the plaintiffs.

46~~52~~.  By virtue of his rampant misrepresentations, fraud and considerable self dealings, Wezner breached his duties of loyalty, good faith and fair dealing.

47~~53~~.  Wezner's conduct was intentional, outrageous and of the sort warranting the imposition of punitive damages.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

### COUNT VI
### (Vicarious Liability as to ~~John~~ Hancock ~~Mutual Life Insurance Co.~~ and Signator)

48~~54~~.  Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

49~~55~~.  Until 1999, Wezner was a registered representative ~~employed by~~ of Hancock and/or Signator for the purpose of selling life insurance policies and other products.

56~~0~~.  When the conduct alleged herein occurred, Wezner was authorized by Hancock and/or Signator to sell life insurance policies, including the Replacement Life Policies.

57~~1~~.  The sale of the Replacement Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with Hancock and/or Signator.

58~~2~~.  Wezner's sale of the Replacement Life policies was actuated by the purpose to carry out his ~~job~~ duties and serve the needs of Hancock and/or Signator.

59~~3~~.  As a result of Wezner's conduct occurring within his scope of his agency ~~employment~~ with Hancock and/or Signator, Hancock and/or Signator are ~~is~~ jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant John Hancock in an amount to be proven at trial, together with prejudgment interest, costs and such other and further relief as the Court deems just.

## COUNT VII
### (Vicarious Liability as to MetLife and MetLife Securities, Inc.)

60~~54~~. Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

61~~55~~. From 1999 onward, Wezner has been employed by MetLife and/or MetLife Securities for the purpose of selling life insurance policies and other financial products.

62~~56~~. When the conduct alleged herein occurred, Wezner was authorized by MetLife and/or MetLife Securities to sell life insurance policies, including the Current Life Policies.

63~~57~~. The sale of the Current Life Policies occurred within authorized spatial and temporal limits as prescribed by Wezner's job duties with MetLife and/or MetLife Securities.

64~~58~~. Wezner's sale of the Current Life Policies was actuated by the purpose to carry out his job duties and serve the needs of MetLife and/or MetLife Securities.

~~59~~65. As a result of Wezner's conduct occurring within his scope of employment with MetLife and/or MetLife Securities, MetLife and/or MetLife Securities ~~is~~are jointly and severally liable for all damages resulting from Wezner's malfeasance.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant MetLife, Inc. in an amount to be proven at trial, together with interest, costs and such other and further relief as the Court deems just.

## COUNT VIII
### (Declaratory Judgment)

6660.  Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

6761.  As a result of the misconduct set forth above and the failure of Hancock and MetLife to provide insurance coverage comparable to that provided by Original Life Policies, the plaintiffs should be afforded the benefits of the Original Life Policies.

WHEREFORE, plaintiffs demand a declaration that Hancock and MetLife are required to provide to plaintiffs policies of insurance bearing the same terms and benefits as the Original Life Policies, together with costs and such other further relief as the Court deems just.

## COUNT IX
### (Failure to Supervise and/or Negligent Supervision)

68.  Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if set forth fully herein.

69.  During all relevant times, including while actively perpetrating his fraudulent scheme against the plaintiffs, Wezner was either a registered representative of Hancock and/or Signator or an employee of MetLife and/or MetLife Securities.

70.  During his tenure (April 1994 to February 26, 1999) as a registered representative of Hancock and/or Signator, Hancock and Signator had a general duty to supervise the actions and conduct of Wezner.

71.  During his tenure (February 20, 1999 to April 22, 2005) as an employee of MetLife and/or MetLife Securities, MetLife and/or MetLife Securities had a general duty to supervise the actions and conduct of Wezner.

72.    Hancock, Signator, MetLife and MetLife Securities breached this duty of supervision, and/or negligently performed such duty in that each failed, among other things, to (i) ensure the suitability of the variable life policies sold to plaintiffs, (ii) failed to detect Wezner's fraudulent activities, including failing to question suspect address changes and changes to beneficiary designations, and (iii) verify trust information.

73.    Defendants' negligent supervision and/or breach of the duty to supervise Wezner is a direct and proximate cause of the losses suffered by the plaintiffs.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount to be proven at trial, together with interest, costs and such other and further relief as the Court deems just.

SEITZ, VAN OGTROP & GREEN, P.A.


_____
R. KARL HILL (DE2747)
khill@svglaw.com
PATRICIA P. MCGONIGLE (DE3126)
pmcgonigle@svglaw.com
222 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone (302) 888-0600
Facsimile (302) 888-0606
Attorneys for Plaintiffs

Dated: October __, 2007

61318 v1                                    14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARK BONK, as trustee of the Harry )
and Patricia Bonk Irrevocable Trust, )
HARRY BONK and PATRICIA BONK, )
)
       Plaintiffs, )     C.A. No. 06-285
)
    v. )
)
RICHARD WEZNER, JOHN HANCOCK )
MUTUAL LIFE INSURANCE CO. and )
METLIFE, INC., )

## **ORDER**

AND NOW, TO WIT, this _____ day of _____, 2007, the Court

having considered *Plaintiffs' Motion for Leave to File First Amended Complaint* (the "Motion"),

and having found said Motion to be meritorious, it is hereby ordered that the Motion is

GRANTED.  Plaintiffs shall file their First Amended Complaint, in the form attached to the

Motion, or before _____, 2007.

      IT IS SO ORDERED.


_____
      United States Magistrate Judge

61325 v1