IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK BONK, as trustee of the Harry and and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 06-285 (***) |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT METLIFE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

William F. Taylor, Jr. (DE #2936)
Daniel M. Silver (DE # 4758)
McCarter & English, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware 19899-0111
(302) 984-6300
wtaylor@mccarter.com
dsilver@mccarter.com

OF COUNSEL:
Penelope M. Taylor
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

Dated: October 30, 2007        Attorneys for Defendant MetLife, Inc.

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................1

I.   Plaintiffs' Claim For Negligent Supervision is Futile ..................................2

    A.  The Negligent Supervision Claim is Time-Barred. .................................2

    B.  The Negligent Supervision Claim Does Not
        "Relate Back" to the Original Complaint. ..............................................3

CONCLUSION ........................................................................................................4

i

# TABLE OF AUTHORITIES

Balthazar v. Atlantic City Medical Center,
    137 Fed. Appx. 482 (3d Cir. 2005)...............................................................2

Cito v. Bridgewater Twp. Police Department,
    892 F.2d 23 (3d Cir. 1989)..........................................................................2

Cupertino v. Marra, 1992 WL 297430 (D. Md. July 29, 1992), aff'd,
    Cupertino v. Schneider, 981 F.2d 1250 (4th Cir. 1992) .................................3

Guveiyian v. Keefe,
    1998 WL 199843 (E.D.N.Y. Mar. 24,1998) .................................................3

Hill v. Scranton,
    411 F.3d 118 (3d Cir. 2005)........................................................................1

Lake v. Arnold,
    232 F.3d 360 (3d Cir. 2000).......................................................................2

In re NAHC, Inc. Sec. Litig.,
    306 F.3d 1314 (3d Cir. 2002)......................................................................2

Red Bird Egg Farms, Inc. v. Agway Insurance Co.,
    1995 WL 413300 (Del. Super. 1995)...........................................................2

## STATUTES

10 Del. C. §8106 ......................................................................................................2

Fed. R. Civ. R. 15(c) ............................................................................................1, 3

ME1 6860235v.1

## PRELIMINARY STATEMENT

In their Motion for Leave to File A First Amended Complaint ("Motion") plaintiffs seek to add a new claim for negligent supervision against MetLife.[1]  Although, as a general rule, motions for leave to amend pleadings are freely granted, there are exceptions.  For example, it is well-established that courts have discretion to deny any proposed amendment – like the one here – that is futile.  Plaintiffs' proposed new claim asserts that MetLife negligently supervised defendant Wezner, a claim which is governed by a three-year statute of limitations.  However, plaintiffs' claims arose at the latest on or about July 15, 2003, the latest transaction described in the proposed Amended Complaint, and more than three years before its filing.  See Proposed Am. Compl. at ¶ 18.

Moreover, because plaintiffs' negligent supervision claim asserts a new, direct claim against MetLife, and not merely liability grounded in the theory of respondeat superior, MetLife was not on notice of this potential claim.  Thus, plaintiffs' proposed amendment cannot be saved by the "relation back" provisions of Federal Rule of Civil Procedure 15(c).

Plaintiffs' negligent supervision claim is time-barred.  Accordingly, this Court should deny plaintiffs' Motion.

## ARGUMENT

Notwithstanding the generally liberal tone of Rule 15 of the Federal Rules of Civil Procedure, the Third Circuit has made clear that trial courts maintain significant discretion to ensure that amendments are not permitted where, as here, those amendments include claims that are (1) futile as a matter of law; (2) made with undue delay and/or in bad faith; or (3) made with dilatory motive such that the amendments will unnecessarily prejudice the defendant.  See Hill v.

---

[1] Defendant MetLife, Inc. ("MetLife") does not oppose the substitution of MetLife Securities, Inc. and Metropolitan Life Insurance Company as defendants in this matter.  Similarly, MetLife takes no position with respect to the new factual allegations asserted at paragraphs 11-14 as they do not pertain to MetLife or Wezner's relationship with MetLife.

1

Scranton, 411 F.3d 118, 134 (3d Cir. 2005); Balthazar v. Atlantic City Medical Center, 137 Fed.

Appx. 482, 488 (3d Cir. 2005) (affirming district court's denial of motion to amend complaint

based on futility of proposed amendment).  The Court's consideration and application of these

factors to deny a motion for leave to amend under Rule 15 ultimately can be reviewed only for

an abuse of discretion.  See generally Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).  As set

forth in more detail below, the Court has every reason to exercise its discretion to deny

Plaintiffs' Motion.

I.      **PLAINTIFFS' CLAIM FOR NEGLIGENT SUPERVISION IS FUTILE.**

        A.      **The Negligent Supervision Claim is Time-Barred.**

        Plaintiffs' assertion that MetLife negligently supervised defendant Wezner is time-barred,

based on the face of the proposed Amended Complaint.  Accordingly, plaintiffs should not be

permitted to amend its Complaint with respect to this claim.  See In re NAHC, Inc. Sec. Litig.,

306 F.3d 1314, 1332 (3d Cir. 2002) (amendment of complaint was futile where the claims were

time-barred under statute of limitations); Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25

(3d Cir. 1989) (statute of limitations defense can be resolved on basis of pleadings where "the

time alleged in the statement of a claim shows that the cause of action has not been brought

within the statute of limitations.") (internal citations omitted) (emphasis in original).

        A claim for negligent supervision is subject to a three-year statute of limitations under

Delaware law.  See 10 Del. C. §8106 (governing limitations on actions "to recover damages

caused by an injury unaccompanied with force"); Red Bird Egg Farms, Inc. v. Agway Ins. Co.

1995 WL 413300, at *3 (Del. Super. 1995) (Exhibit A hereto).  The transactions at issue

concluded on July 15, 2003.  See Proposed Am. Compl. at ¶¶ 18, 23 ("During the final

transactions discussed above…") (emphasis added).  Plaintiffs' Motion was filed on October 12,

2007, four years and two months after the conclusion of the transactions at issue. Plaintiffs'

claims are time barred.

### B.    The Negligent Supervision Claim Does Not "Relate Back" to the Original Complaint.

Nor can plaintiffs take refuge in Federal Rule of Civil Procedure 15(c), which provides,

in relevant part, that an amendment of a pleading relates back to the date of the original pleading

when "the claim or defense asserted in the amended pleading arose out of the conduct,

transaction or occurrence set forth or attempted to be set forth in the original pleading." Federal

courts have determined that where the original pleading asserted only vicarious claims, there is

not sufficient notice that a direct claim may be asserted based on the underlying events. See

Cupertino v. Marra, 1992 WL 297430 (D. Md. July 29, 1992), aff'd, Cupertino v. Schneider, 981

F.2d 1250 (4th Cir. 1992) (refusing to allow a plaintiff to amend a complaint against an employer

to add a claim for negligent entrustment of an automobile where the original complaint alleged

that the employer was liable under the theory of respondeat superior) (Exhibit B hereto);

Guveiyian v. Keefe, 1998 WL 199843, at *4 (E.D.N.Y. Mar. 24,1998) (refusing to allow a

plaintiff to amend her complaint against an employer to add claims alleging the employer's

actual participation in events prompting the suit where the initial complaint only alleged liability

under the theory of respondeat superior and, accordingly, did not provide notice against

defendant that "claims could be brought against him as an actual participant in the events

underlying this action") (Exhibit C hereto). Here, the all allegations asserted against MetLife in

the original Complaint are grounded in theories of vicarious liability and respondeat superior;

plaintiffs assert no direct claims.

Accordingly, plaintiffs' proposed negligent supervision claim does not "relate back" to

the allegations of the original Complaint sufficient to save the claim from being barred by the

applicable statute of limitations, and the proposed amendment should be denied.

## CONCLUSION

For all of the reasons set forth above, MetLife respectfully requests that Plaintiffs'

Motion for Leave to File a First Amended Complaint be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

McCarter & English, LLP

/s/ William F. Taylor, Jr.
William F. Taylor, Jr. (DE #2936)
Daniel M. Silver (DE # 4758)
McCarter & English, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware 19899-0111
(302) 984-6300
wtaylor@mccarter.com
dsilver@mccarter.com

</div>

Dated:  October 30, 2007                    Attorneys for Defendant MetLife, Inc.

# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                      Page 1
Not Reported in A.2d, 1995 WL 413300 (Del.Super.)
**(Cite as: 1995 WL 413300 (Del.Super.))**

**c**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.
RED BIRD EGG FARMS, INC., Plaintiff,
v.
AGWAY INSURANCE COMPANY and Jim Ries,
Defendants.
**Civ. A. No. 92C-12-188.**

Submitted April 13, 1995.
Decided May 10, 1995.

Upon Motion of Plaintiff to Amend Complaint-
-Granted in part, Denied in part.

James F. Maher, New Castle, for plaintiff Red Bird
Egg Farms, Inc.

Ted Martin Berg, Goldfein & Joseph, Wilmington,
for defendant Agway Ins. Co.

*MEMORANDUM OPINION*
HERLIHY, Judge.

**\*1** Pending before the Court is the motion of
plaintiff Red Bird Egg Farms, Inc. [plaintiff] to
amend its complaint.  Defendant Agway Insurance
Company [Agway] opposes the motion.

*FACTS*
In December 1992, plaintiff filed a declaratory
judgment action against Agway and Jim Ries
[Ries], an independent insurance agent.  Agway
had issued an insurance policy to plaintiff after Ries
issued a binder to plaintiff.

Plaintiff produces and delivers eggs from facilities
in Delaware, New Jersey and Maryland.  In 1990,
it sought out Ries to obtain an "all-risk" policy on
its operations, including buildings.  Ries issued an
all-risk binder on September 28, 1990 and listed
Agway as the insurer.

While the complaint was filed over two years ago,
the record to date is meager, at best.  Other than
the fact that Agway received a copy of the binder
Ries issued to plaintiff, no record has been made, or
provided to the Court, showing when Ries forwar-
ded it to Agway, under what circumstances and/or
with what information.

It has been represented that Ries has been unco-
operative.  Perhaps that lack of cooperation ex-
plains some of the gaps in the record.  In any
event, no record has been made available to the
Court to show what trail the binder followed once it
arrived at Agway or what trail it followed once the
policy left Agway or with what information, if
any.  Nor does the Court know whether Ries was
aware or should have been aware of the issued
policy in 1990 and whether he knew it differed
from the binder.

In October 1990, Agway issued a policy to
plaintiff.  It was not an all-risk policy.  There were
a series of exclusions in the policy.  Not surpris-
ingly, an event occurred which has prompted this
litigation.  On June 7, 1992, one of plaintiff's
buildings collapsed.  Again, the record available to
the Court is unclear what caused the collapse.

The collapse caused the death of a number of egg-
laying chickens and damage to cages and other
parts of the building.  No human beings were in-
jured. Interestingly enough, the chickens were sep-
arately insured by another carrier and that loss has
been paid.  The loss of the eggs, cages and other
structures is what this dispute is all about.

Plaintiff claims that this latter loss amounts to
$63,139.77.  When Agway denied coverage for the
loss, plaintiff brought the declaratory judgment ac-
tion.  Agway obtained a default judgment on
September 10, 1993 in its cross-claim against
Ries.  On January 7, 1994, plaintiff obtained a de-
fault judgment against Ries.

Thereafter, plaintiff undertook efforts to collect
from Ries.  In the Fall of 1994, plaintiff learned

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in A.2d                                                                                 Page 2
Not Reported in A.2d, 1995 WL 413300 (Del.Super.)
**(Cite as: 1995 WL 413300 (Del.Super.))**

that Ries did not have an errors and omissions policy in effect in 1990 when he issued the binder to plaintiff. In effect, plaintiff learned that Ries was and is judgment-proof. On February 1, 1995, plaintiff moved to amend its complaint. [FN1]

> FN1. The motion came up during this Court's Friday motion time. After brief oral argument, the Court ordered additional briefing and held further oral argument.

### PARTIES' CONTENTIONS

Plaintiff contends that paragraphs 4, 5 and 6 of its complaint provide the basis for it to amend. Those paragraphs read as follows:

*2 4. On or about September 28, 1990, Defendant Ries issued a binder of insurance on behalf of Defendant [Agway] covering all risks associated with Plaintiff's commercial egg producing business.

5. Defendant Ries represented that he was an agent for Defendant Agway and that Plaintiff was insured against all risks associated with Plaintiff's poultry farms, egg production and crop farms.

6. The Plaintiff relied on the representation of Defendant [Ries] concerning the insurance coverage provided by Defendant Agway in that the Plaintiff entered into a contract on October 24, 1990 to purchase the insurance coverage.

Complaint at 1-2.

The new allegations are: (1) Agway has refused to pay plaintiff's loss thus making it liable for a "prima facie tort", (2) Agway negligently supervised Ries by failing to check and recheck his qualifications and standing with state regulators, by not making sure he issued only authorized binders for Agway and by not making sure he kept his errors and omissions policy in effect at all times and (3) Agway negligently "entrusted" Ries by allowing him to issue binders for it without insuring he issued proper Agway binders and failing to check on Ries' reputation for unreliability.

Agway argues that plaintiff's negligence claims are barred by the statute of limitations and are not within the reach of Superior Court Civil Rule 15. It also

argues that the proposed amendments lack merit and should be dismissed now.

### DISCUSSION

Amendments to pleadings "shall be freely given when justice so requires". Superior Court Civil Rule 15(a); Bissell v. Papastavros' Associates Medical Imaging, Del.Super., 626 A.2d 856, 865 (1993). That liberality of granting motions to amend is to be tempered by the requirements of Rule 15, particularly when the statute of limitations is implicated. Mergenthaler, Inc. v. Jefferson, Del.Supr., 332 A.2d 396, 398 (1975).

The statute of limitations is implicated. Presumably there were negotiations or discussions involving plaintiff and Ries before September 28, 1990, the date Ries issued the binder. The record is unclear what, if any, they were and when. Agway's policy's commencement date is sometime in October 1990, although, again the record presented to the Court is silent about when plaintiff received the policy and from whom.

For purposes of the current motion, the Court will assume the action accrued in September or October 1990 (the latter being the month during which plaintiff presumably received Agway's policy). Plaintiff filed suit in December 1992. Agway argues that the applicable statute of limitations is two years. 10 Del.C. § 8107 [FN2]. Agway argues that since plaintiff's original complaint was filed after the two-year statute of limitations had expired, plaintiff's proposed amendments are barred by that statute. In effect, even if the proposed amendments related back, they would relate back to a time already beyond the expiration of the statute, i.e., December 1992, when the lawsuit was filed. Plaintiff did not address the statute of limitations issue in its briefing.

> FN2. Actions Subject to 2 Year Limitation. No action to recover damages for wrongful death or for injury to personal property shall be brought after the expiration of 2 years from the accruing of the cause of such action.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in A.2d                                                                    Page 3
Not Reported in A.2d, 1995 WL 413300 (Del.Super.)
**(Cite as: 1995 WL 413300 (Del.Super.))**

10 *Del.C.* § 8107.

**\*3** When properly applied, Rule 15 can act to "en-
large" the statute of limitations. *Mergenthaler,* 332
A.2d at 398. But is the two-year statute of limita-
tions applicable to amendments discussed in this
decision?

While the record presented to the Court is minimal,
at best, it appears that no external force caused the
building in question to collapse and certainly no ac-
tion of Agway caused the building to collapse.
With that understanding, it is clear that the two-
year bar of § 8106 is inapplicable. Section 8107 is
limited to injuries accompanied by force. *Hood v.
McConemy,* D.Del., 53 F.R.D. 435, 444 (1971);
*Bradford, Inc. v. Travelers Indemnity Co.,*
Del.Super., 301 A.2d 519, 524 (1972).

Therefore, the applicable statute of limitations is 10
*Del.C.* § 8106 [FN3] which provides for a three-
year bar from the date of the accrual of the action.
Plaintiff's original declaratory judgment action was
filed within that three-year period. Obviously, the
proposed amendments are being sought beyond the
three years and otherwise, would be barred unless
the requirements of Rule 15 were met. [FN4]

> FN3. Actions subject to 3 year limitation.
> No action to recover damages for trespass
> ... and no action to recover damages caused
> by an injury unaccompanied with force or
> resulting indirectly from the act of the de-
> fendant shall be brought after the expira-
> tion of 3 years from the accruing of the
> cause of such action;
> 10 *Del.C.* § 8106.

> FN4. The Court deems it unnecessary to
> address the time of discovery issue because
> of the result reached herein.

The operative portion of Rule 15 reads:
  Relation Back of Amendments. An amendment
  of a pleading relates back to the date of the ori-
  ginal pleading when

                    * * *

  (2) the claim or defense asserted in the amended
  pleading arose out of the conduct, transaction, or
  occurrence set forth or attempted to be set forth
  in the original pleading,
Superior Court Civil Rule 15(c).

Plaintiff's original claim was that it contracted for
an all-risk policy but that Agway issued a policy
covering less. However, the gravamen of
plaintiff's *initial* claim against Agway was that the
policy it issued covered plaintiff's loss and this
Court should so declare.

It stretches the imagination too far to construct a
negligent supervision and/or negligent entrustment
action out of that kind of original series of events.
One of the key ingredients to a successful amend-
ment is whether the adverse party has received ad-
equate notice. 6A Wright and Miller, *Federal
Practice and Procedure,* § 1497 (1990).

Out of one transaction where Agway issued a
policy covering a loss less than the one binder
covered, plaintiff seeks to say that Agway routinely
allowed Ries to do so. Further, plaintiff seeks re-
covery of damages arising out of Agway's alleged
negligence in not keeping tabs on the status of Ries'
errors and omissions policy and/or his status with
state regulators, *i.e.,* insurance commissioners.

Plaintiff would inject by these amendments the con-
tract between Agway and Ries, the issues of the de-
gree and quality of control over Ries, his business,
his standing with regulatory bodies and the standard
of care that insurance companies have or should
have with independent agents. The latter point as-
sumes Ries was an independent agent which is also
a litigable issue if the amendments were allowed
which plaintiff seeks.

These circumstances are not present in the conduct,
transaction or occurrence set out in the original
complaint. *See Seth v. Spruenken,* Del.Super., 328
A.2d 143, 145 (1974).

**\*4** Plaintiff proposes to amend its complaint to add
a claim for "prime facie tort". The nature and de-
scription of this animal is not only ill-defined, it is

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in A.2d                                                          Page 4
Not Reported in A.2d, 1995 WL 413300 (Del.Super.)
**(Cite as: 1995 WL 413300 (Del.Super.))**

undefined. Presumably the proposed amendments are an attempt to evade what the plaintiff perceived to be the guillotine of the statute of limitations. What plaintiff may be seeking to claim is that Agway is and has been acting in bad faith in its denial of coverage and that its conduct is ongoing, thus, placing it outside any limitations period.

However, the meagerness of the proposed amendment relating to "prime facie tort" is so much that this Court cannot determine whether plaintiff is claiming bad faith or something else. In addition, a bad faith claim implicates specific, ongoing, unreasonable conduct which has not been set out with any specificity other than the general denial of coverage. [FN5]

> FN5. *Bryant v. Federal Kemper Ins. Co., Del.Super., 542 A.2d 347 (1988).*

In other words, plaintiff's proposed amendment to add a claim of "prime facie tort" is insufficiently stated for this Court to rule whether it would or would not be allowed. As stated, it cannot be allowed because it has nothing to do with Ries' or Agway's conduct or the transaction or occurrence leading up to and including the policy Agway issued to plaintiff.

Plaintiff will have thirty days from the date of this opinion to move to amend its complaint to add a claim of bad faith, if it chooses to do so. Failure to file such a motion in the time given shall constitute a waiver of a bad faith claim. The Court's allowance of the filing of this motion is *not* a ruling on whether the amendment will be allowed or the merits of such an amendment.

The analysis of plaintiff's proposed amendments does not stop here. At oral argument, the Court raised the question of whether there is not a potential cause of action against Agway for negligently issuing a less than all-risk policy.

The analysis starts by re-examining plaintiff's complaint. Earlier, the Court quoted paragraphs 4 through 6 of the complaint, *ante* at 2-3. The Court believes paragraph 7 should be added to the mix.

It reads:

> 7. Defendant Agway and Defendant Ries failed to give the Plaintiff notice that the insurance policy issued by Defendant Agway replacing the binder issued on September 28, 1990 contained terms and conditions significantly different from those contained in the binder.

Complaint at 2.

As noted, the issue is whether the proposed amendment "arose out of the conduct, transaction or occurrence" in the complaint. Rule 15(c)(2). Ordinarily, the Court is not confined to the complaint itself to resolve the issue at hand but may consider whether sources other than the pleadings put the opposing party on notice. *6A Wright and Miller, Federal Practice and Procedure, § 1497 (1990).*

Plaintiff acknowledges that there has been little discovery. Therefore, by necessity, the conduct must be set out in the complaint. The complaint alleges that plaintiff contracted for an all-risk policy, received a binder policy from Ries to that effect listing Agway as the insurer but that Agway provided less coverage. While it might be unclear how such allegations impact on a declaratory judgment action to interpret the ultimate policy Agway issued, the sequence of events forms the same basis for a negligence claim.

*5 In effect, based on the *same* series of incidents clearly set out in the complaint plaintiff wishes to add a negligence cause of action. This is permissible. *Oakes v. Gilday,* Del.Super., 351 A.2d 85, 88-89 (1976); compare *Seth,* 328 A.2d 143 (wrongful death claim not allowed for stillborn baby when original complaint was by mother for her damages).

In contesting plaintiff's original proposed amendments, Agway argued it would be prejudiced. While that argument is moot as to those proposals, the issue of prejudice needs to be addressed. "It is the general policy in this jurisdiction to be liberal in permitting amendments to pleadings unless the opposing party would be seriously prejudiced thereby." *Dunfee v. Blue Rock Van & Storage, Inc.,*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Del.Super., 266 A.2d 187, 188 (1970); accord *Hess v. Carmine*, Del.Super., 396 A.2d 173, 176 (1978); *Annone v. Kawasaki Motor Corp.*, Del.Supr., 316 A.2d 209, 211 (1974).

Agway's contention of prejudice is more persuasive when viewed in light of plaintiff's original proposed amendments. That persuasiveness arises from the fact that plaintiff's proposed amendments would have required witnesses not reasonably contemplated in the nature of the conduct described in the original complaint.

Agway also argues prejudice on the grounds that Ries' lack of cooperation and being a New Jersey resident. Ries will probably not be the most cooperative witness. He has default judgments against him. But both plaintiff *and* Agway have default judgments. Therefore, whatever lack of cooperation exists, if any, is likely to impact on both sides. If necessary, commissions can be obtained to take his deposition in New Jersey.

Ries' role is not that significant--at least at this point. The record is undisputed he issued an all-risk binder and that Agway issued a policy providing less coverage than all-risk. [FN6] The key witnesses will be Agway's own employees who received Ries' binder but issued a different policy. These persons will be more accessible to Agway than to plaintiff. There can be little or no prejudice under these circumstances. Whatever prejudice may exist is so minimal as to be immaterial to the proposed amendment.

> FN6. Since the Court is allowing plaintiff to amend its complaint to claim Agway negligently issued insurance for less than all risk, the potential of a claim of contributory negligence arises. Counsel have sent the Court certain portions of the policy. It is premature to determine plaintiff's duty, if any, when it received the policy (whether or not it insured for all-risk or something less). It would be premature and inappropriate to discuss this further as the issue of contributory negli-

gence, if any, is for the jury. *Howard v. Food Fair Stores, New Castle, Inc.*, Del.Supr., 201 A.2d 638, 641 (1964).

In addition, while the amendment is being proposed now, Agway was on notice of the claim shortly after the loss. Presuming it acted prudently, it should have retained its records.

### CONCLUSION

For the reasons stated herein, the Court enters the following order:

1. Plaintiff's motion to amend its complaint to add a count of negligent supervision (amendment paragraphs 16-18) is DENIED.

2. Plaintiff's motion to amend its complaint to add a count of negligent entrustment (amendment paragraphs 19-21) is DENIED.

3. Plaintiff's motion to amend its complaint to add a count of "*prime facie* tort" (amendment paragraphs 22 and 23) is DENIED.

4. Plaintiff shall have thirty days from the date of this decision to move to amend its complaint to add an action alleging bad faith, if it so chooses to amend. Failure to file such a motion within that period shall constitute a waiver of any bad faith claim. Agway shall have the normal time within with to file its response to this motion, if the motion is filed.

*6 5. Plaintiff shall have twenty days from the date of this decision to file an amended complaint alleging negligence as set out herein. Agway will have twenty days to file its answer. There is no need to move to amend, prior to the filing of the amendment.

IT IS SO ORDERED.

Not Reported in A.2d, 1995 WL 413300 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT B

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 297430 (D.Md.)
**(Cite as: 1992 WL 297430 (D.Md.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Maryland.
Yolanda T. CUPERTINO, et al., Plaintiffs,
v.
Michael J. MARRA, d/b/a Capital Architectural
Refinishers, Defendants.
**Civ. A. No. HAR90-2264.**

July 29, 1992.

MEMORANDUM OPINION
HARGROVE, District Judge.

**\*1** Currently before this court is a motion by Defendants Michael J. Marra d/b/a Capital Architectural Refinishers for summary judgment pursuant to Federal Rule of Civil Procedure 56. The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.6.

FACTS
This action arises out of a collision on May 28, 1988, between a vehicle driven by Yolanda Cupertino ("Plaintiff"), and a vehicle driven by William Joseph Schneider ("Schneider"). The vehicle driven by Schneider was owned by the Defendant, Michael Marra ("Defendant"). Defendant moves for summary judgment on grounds that the accident occurred at a time when Schneider was not using the vehicle in the course of his employment with Marra but rather was driving it for his own personal use.

I.
Under Maryland law, the owner of an automobile is not liable for negligence by the driver of the automobile unless the driver is acting as the owner's agent, servant or employee. _Talbott v. Gegenheimer, 245 Md. 186, 189-90 (1967); Williams v. Wheeler, 252 Md. 75, 81-82 (1969); Dhanraj v. Potomac Electric Power Co., 305 Md. 623, 628, 506 A.2d 224 (1986)._ The uncontradicted evidence in this case indicates that Schneider was not operating his vehicle at the time of the accident in the course of his employment with Defendant.

Plaintiffs have not opposed Defendant's claim that Schneider was using Defendant's car for personal use at the time of the accident. Rather, Plaintiff's move to amend the Complaint to add a count for negligent entrustment, noting that counsel for Plaintiff recently learned of Schneider's criminal record and history of driving violations including driver's license suspensions.

Defendant opposes the request to amend to add allegations that Marra was negligent in entrusting his vehicle to Schneider. The three year statute of limitations applicable to a negligent entrustment action expired in May of 1991. However, Plaintiffs seek to amend under Rule 15(c)(2) of the Federal Rules of Procedure, which provides that when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading," the amendment relates back to the filing date of the original pleading.

The Court finds that relation back is not permissible because the amendment is not based on the same conduct as alleged in the original Complaint. _See Miller v. Fairchild Industries, Inc., 668 F.Supp. 461, 463 (D.Md.1987)._ Plaintiffs did not allege negligence against Marra individually or as the owner of Capital Architectural Refinishers in the original Complaint, as the legal theory against them involved respondeat superior only.

A cause of action for negligent entrustment is brought against the entrustor for allowing another individual to use his "chattel" knowing, or having reason to know, that such use would involve an inordinate risk of harm. _Herbert v. Whittle, 69 Md.App. 273, 280, 517 A.2d 358 (1986)._ Under this theory, the entrustee's conduct in causing the injury is not imputed to the entrustor.... Instead, the entrustor's negligence consists of supplying the chattel." _Id._ at 280.

**\*2** As noted by Defendant, in a claim for negligent entrustment, it would be "important to know what inquiries Marra made of Schneider when he hired

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 297430 (D.Md.)
**(Cite as: 1992 WL 297430 (D.Md.))**

Page 2

him, whether Schneider informed Marra of his pre-
vious driving record, whether Schneider concealed
his prior record, whether Schneider's record in fact
was enough to put Marra on notice of unreasonable
risk, and the like." Because negligence on Marra's
part has never been an issue in this case, an amend-
ment to add a claim of negligent entrustment would
not relate back to the date of the original Com-
plaint, and is thus barred by the statute of limita-
tions.

Therefore, Defendants' Motion for Summary Judg-
ment is appropriately granted. Plaintiffs' motion to
amend Complaint is denied. It will be so ordered.

                    ORDER
In accordance with the foregoing Memorandum
Opinion, IT IS this 29th day of July, 1992 by the
United States District Court for the District of
Maryland, hereby ORDERED:

1. That the Motion for Summary Judgment of De-
fendants, Michael J. Marra, et al., in the above ref-
erenced case BE, and the same hereby is, GRAN-
TED;

2. That Plaintiff's Motion for Leave to Amend
Complaint BE and the same hereby IS DENIED;

3. That the Clerk of the Court CLOSE this case;

4. That the Clerk of the Court mail copies of this
Order and the attached Memorandum Opinion to all
parties of record.

Not Reported in F.Supp., 1992 WL 297430 (D.Md.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.                                                  Page 1
Not Reported in F.Supp., 1998 WL 199843 (E.D.N.Y.)
**(Cite as: 1998 WL 199843 (E.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Vicki Lynn GUVEIYIAN, Plaintiff,
v.
John KEEFE and James F. Brennan, Defendants.
**No. 97-CV-5210.**

March 24, 1998.
Rose M. Day, Day & Associates, Great Neck.

Michael G. Wolfson, Wolfson & Carroll, New
York.

MEMORANDUM AND ORDER
GLASSER, District J.

**\*1** By Memorandum and Order dated January 12,
1998 this Court granted defendants' motion to dis-
miss portions of the Complaint in this action. [FN1]
Plaintiff filed and served an Amended Complaint
on the same date. Defendants now move to dismiss
portions of the Amended Complaint and, for the
following reasons, that motion is granted.

> FN1. In particular, this Court dismissed the
> first and fourth causes of action (battery
> and intentional infliction of emotional dis-
> tress) insofar as they were directed against
> defendant Brennan and the second and
> third causes of action (violation of Section
> 9 of the New York Human Rights Law and
> negligent hiring and supervision) in their
> entirety.

FACTS
The factual allegations of the Amended Complaint,
which are assumed to be true for purposes of this
motion, are set forth below.

On or about September 10, 1996 plaintiff Vicki
Lynn Guveiyian ("Guveiyian") assembled with a
small group of New York citizens and residents and
informed them of "their eligibility for voting regis-
tration, and the exercise of their right of fran-

chise." Amended Complaint, ¶ 8. While she was
so involved, defendant John Keefe ("Keefe"), a le-
gislative assistant, acting in the scope of his em-
ployment as an "agent, servant, employee and/or li-
censee of [defendant] James F. Brennan
("Brennan"), a member of the New York State As-
sembly," id., ¶ 6, "acting in concert" with Brennan
subjected her "to unlawful sexual contact with in-
tent to cause physical injury." Id., ¶ 8. In particular,
Keefe, again "acting in concert" with Brennan, ap-
proached her "and did grab and squeeze [her] breast
and also pushed ... and scratched her about her
body causing [her] to sustain bruises, swelling,
scratches and substantial pain to her body and caus-
ing substantial mental anguish." Id., ¶ 9. In explain-
ing Brennan's involvement in these events, the
Amended Complaint alleges "[t]hat the defendant
JAMES F. BRENNAN assisted, directed, con-
spired, transported the defendant JOHN KEEFE to
and from the place/location of the occurrence." Id.,
¶ 10.

Plaintiff asserts the following causes of actions
based upon these allegations: (1) battery and unlaw-
ful sexual contact; (2) violation of Section 9 of the
New York Civil Rights Law; (3) negligent hiring
and supervision; (4) intentional infliction of emo-
tional distress; (5) violation of 42 U.S.C. § 1983
and (6) violation of 42 U.S.C. § 1985. [FN2] Al-
though the notice of motion is directed to the
Amended Complaint in its entirety, defendants'
Memorandum of Law addresses the first and fourth
causes of action only insofar as they are directed
against Brennan.

> FN2. The numbers (1) through (6) corres-
> pond to the first through sixth causes of ac-
> tion of the Amended Complaint.

DISCUSSION
A. *Standard for Motion to Dismiss*

When deciding a motion to dismiss pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Proced-
ure, a court must accept all allegations in the Com-

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

plaint as true and draw all reasonable inferences in favor of the plaintiff. *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. *Battery and Intentional Infliction of Emotional Distress* [FN3]

> FN3. The Amended Complaint also repeats allegations that Keefe was acting within the scope of his employment when he battered Guveiyian. Because this Court has already determined that Keefe was not acting within the scope of his employment we do not address this question again. *See* Day Aff., ¶ 6 (agreeing that this issue has already been determined by the court and need not be addressed again).

These causes of action were dismissed insofar as they were asserted against Brennan in this Court's January 12, 1998 Memorandum and Order. Defendant again moves to dismiss these causes of action insofar as they are asserted against Brennan, arguing that because the Amended Complaint now alleges that Brennan was an actual participant [FN4] in the actions underlying the Complaint they do not relate back to the original Complaint and are barred by the applicable limitations period.

> FN4. In particular, the Amended Complaint alleges that Keefe acted "in concert" with Brennan and that Brennan "assisted, directed, conspired, transported the defendant ... to and from the place/location of the occurrence." Amended Complaint, ¶¶ 9-10.

**\*2** The events giving rise to this action occurred on or about September 10, 1996 and this action was commenced on September 9, 1997. C.P.L.R. § 215 provides for a one-year limitations period for both the battery claim--which is specifically mentioned in the section--and the claim for intentional inflic-

tion of emotional distress. *See Kourkoumelis v. Arnel,* 238 A.D.2d 313, 655 N.Y.S.2d 653, 654 (App.Div.1997) (one year limitations period also applies to claims for intentional infliction of emotional distress). Therefore, unless plaintiff can "relate back" her claims to the date of the filing of the original complaint in this action, her new claims are untimely.

In pertinent part, Fed.R.Civ.P. 15(c) provides as follows:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; ...

In construing Fed.R.Civ.P. 15(c) courts have focused on "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." *Nettis v. Levitt,* 1997 WL 793006, \*4 (S.D.N.Y.1997) (quoting *In re Chaus Sec. Litig. .,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992)). In addition, "whereas allegations which simply amplify the facts alleged in the original pleading or set forth those facts with greater specificity will relate back, allegations pronouncing new claims in an amended pleading will not relate back when based upon new facts and different transactions." *Id.* (citations omitted). Finally, "[a]n amendment will not relate back if it set forth a new set of operational facts; it can only make more specific what has already been alleged." *Id.* (quoting *Pruiss v. Bosse,* 912 F.Supp. 104, 106 (S.D.N.Y.1996)).

The Second Circuit has not permitted amended pleadings to relate back where they set out new conduct, transactions or occurences. For example, in *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992), the plaintiff amended his complaint to assert a § 1981 claim based upon the allegedly discriminatory refusal of his union to process two

Not Reported in F.Supp.                                                                              Page 3
Not Reported in F.Supp., 1998 WL 199843 (E.D.N.Y.)
**(Cite as: 1998 WL 199843 (E.D.N.Y.))**

grievances.   Because the new claim concerned a second grievance that the union refused to process--an allegation which was not present in the initial complaint--the court held that the new claim did not relate back under Fed.R.Civ.P. 15(c) and was therefore untimely.   Similarly, in *Jackson v. Suffolk County Homicide Bureau,* --- F.3d ----, 1998 WL 37529 (2d Cir.1998), the court held that claims arising from the photography of plaintiff's nude body after his arrest did not relate back to the original complaint which alleged only that the police had employed excessive force.   In contrast, in *Benfield v. Mocatta Metals Corp.,* 26 F.3d 19 (2d Cir.1994), the court reversed a determination that a RICO claim did not relate back when the original complaint alleged other causes of action arising from substantially the same facts and there could consequently be no claim of unfair surprise. 26 F.3d at 23.

**\*3** The emphasis on "unfair surprise" was also the crucial consideration in *Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.1973).   There, the court held that a § 1983 claim premised on police assault did not relate back when the original complaint contained only a § 1983 claim alleging that the defendant had caused the plaintiff "to be convicted, by illegal means in lying and inflaming the public about him through various News Media and had deliberately fed the news media false information to slander him and influence the courts, people and general public against him." 478 F.2d at 522. As the court noted,

> [i]f the test were merely temporal, the assault claim would fall within Rule 15(c), since the alleged assault came within a short time after the exhibition before the television cameras [the principal set of facts underlying the claim contained in the initial complaint].  However the test is not contemporaneity but rather adequacy of notice ... [T]he inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.  Under that test the case for relation back conspicuously fails.   On the most liberal reading not a word in the [initial] complaint even suggested a claim of physical assault. (citations omitted).

478 F.2d at 526.

In *Unicure, Inc. v. Thurman,* 97 F.R.D. 1 (W.D.N.Y.1982), the court confronted a similar problem to that presented here.   Although the defendant had previously been named as a party to the action, several of the claims were not originally asserted against him.   When this defendant moved to dismiss the amended complaint, the court granted the motion and dismissed the claims as untimely:

> Moreover, the original Complaint fails to allege that Nelson himself committed any of the alleged wrongful acts set forth in the fifth through eighth causes of action.   The original Complaint's fifth cause of action ... does allege that Thurman and Nelson conspired to obtain control of Unicure.   In and of itself, such a "conspiracy" would not amount to wrongful conduct by Nelson.   More importantly, the original Complaint fails to allege that any of the conduct on Thurman's part which serves as a basis for the fifth, sixth, seventh and eighth causes of action was in furtherance of the alleged conspiracy between Nelson and him.
> Nor is there any allegation that Nelson induced, encouraged or assisted Thurman's wrongful conduct.

97 F.R.D. at 5. For these reasons, the court concluded that the original complaint set forth no factual basis which would indicate to the defendant that he could be responsible for particular actions alleged in the complaint.

Although the defendant in *Thurman* was not named in the causes of action asserted against him in the amended complaint, the reasoning of the Court is equally applicable here.   Although Brennan was named as a defendant to the claims for battery and intentional infliction of emotional distress, any potential liability rested exclusively on a vicarious liability theory.   No allegation of his actual participation was included in the Complaint.

**\*4** Here, there can be no question that the original pleading did not give Brennan notice that claims could be brought against him as an actual participant in the events underlying this action.   Furthermore, the Amended Complaint sets forth a "new

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                          Page 4
Not Reported in F.Supp., 1998 WL 199843 (E.D.N.Y.)
**(Cite as: 1998 WL 199843 (E.D.N.Y.))**

set of operational facts"; in the original pleading, there was no allegation that Brennan transported, conspired, directed or assisted Keefe. *See Cupertino v. Marra,* 1992 WL 297430 (D.Md.1992), *aff'd,* 981 F.2d 1250 (4th Cir.) (Table) (motion to amend complaint denied where it sought to add claim for negligent entrustment of an automobile to previous claim advanced under a theory of respondeat superior). For these reasons, these claims, insofar as they are asserted against Brennan, are dismissed as untimely. [FN5]

> FN5. Because we have determined that the claims asserted against Brennan are, in any event, untimely we do not address defendants' argument that the Amended Complaint changes the capacity in which Brennan is sued and that relation back is therefore not permitted.

C. *Section 9 of the New York Human Rights Law and Negligent Hiring and Supervision*

This cause of action was dismissed in this Court's January 12, 1998 Memorandum and Order. Plaintiff admits that this issue has already been determined by the Court and need not be addressed again. Day Aff., ¶ 6; Pl. Mem. at 3-4.

D. *Section 1983 Claim*

To maintain a section 1983 action, two essential elements must be shown: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or law of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

Defendants argue that plaintiff has not satisfactorily alleged that defendants acted under color of state law. Defendants are correct. Although Brennan is a member of the New York State Assembly and Keefe, his legislative assistant, is an employee of the State of New York, Amended Complaint, ¶¶ 6-7, those facts in themselves do not indicate that they were acting under color of state law. Nor is the

bare and conclusory allegation that they were acting under color of state law sufficient. *See* Amended Complaint, ¶ 7 ("Each and all of the foregoing acts of defendant JOHN KEEFE were done by him under the color and pretense of the statutes, ordinances, regulations, customs, and usage of the State of New York, and the County of Kings, and by virtue of, and under the authority of, ... his employment by the State of New York ...").

As the United States Court of Appeals for the Second Circuit recently explained,

[t]o act under color of state law or authority for purposes of section 1983, the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)(quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *see also Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1829, 118 L.Ed.2d 504 (1992)("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").... It is "axiomatic that under 'color' of law means 'pretense' of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell v. Callan,* 13 F.3d 545, 547-48 (2d Cir.1994).

*5 *Monsky v. Moraghan,* 127 F.3d 243, 245 (2d Cir.1997). *See also Thomas v. Cannon,* 751 F.Supp. 765, 767 (N.D.Ill.1990)("the act committed must be in some way related to the performance of the duties of the state office"). Here, there is no allegation that the defendants "exercised power possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law." [FN6]

> FN6. As defendants note, plaintiff does not state whether this claim is asserted against defendants in their official or individual capacities. In any event, the "under color of state law" requirement is-- because of the structure of the statute--applicable to

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1998 WL 199843 (E.D.N.Y.)
**(Cite as: 1998 WL 199843 (E.D.N.Y.))**

any § 1983 claim.  In an official capacity suit, other requirements must also be met. *See Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)(governmental entity is liable only where it is a "moving force" behind the violation); *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(official policy, ordinance, regulation or decision must have played a role in the violation of federal law).

In support of her contention that she has stated a § 1983 claim plaintiff cites to *Weiss v. Feigenbaum*, 558 F.Supp. 265 (E.D.N.Y.1982). In *Weiss*, after the New York City Board of Elections ruled that Weiss--a candidate for the position of councilmember--had the requisite number of signatures to be placed on the ballot for the election, the incumbent candidate commenced an action against him in state court seeking to reverse that determination. Upon discovering the judge's signature on the incumbent's nominating petition, Weiss brought an action in federal court alleging a violation of, *inter alia*, §§ 1983 and 1985(3). Included in the complaint were allegations that the state court lawsuit had been financed by the City or State of New York. In considering a motion to dismiss the civil rights claims, the court held that

> the right to vote remains, at bottom, a federally protected right.  If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order.

558 F.Supp. at 276.  The court did not, however, address the other, "under color of state law," prong of a § 1983 claim. Indeed, unlike the present case, the matter was not and could not seriously have been at issue.

For this reason, this cause of action is also dismissed.

*F. Section 1985 Claim*

The four elements of a 42 U.S.C. § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)(citing *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)( "Scott")).   Furthermore, there must be "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 1088 (citing *Scott*, 463 U.S. at 829); *See also Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)(same).

Leaving aside the question of whether the other elements have been properly alleged, it is clear that plaintiff has made no claim that any conspiracy between Keefe and Brennan was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.*

*6 Her allegations are that while she was informing a group of persons "concerning their eligibility for voting registration, and the exercise of their right of franchise, defendant JOHN KEEFE, acting in concert with defendant JAMES F. BRENNAN, without any consent thereto, subjected [her] to unlawful sexual contact with intent to cause physical injury" and injured her in the process.   Amended Complaint, ¶¶ 8-9.  She also alleges "[t]hat the defendants conspired and acted in concert to interfere with [her] civil rights," "[t]hat the acts of the defendants were done with the purpose and intent of depriving [her] of the lawful exercise of said rights as protected by said Section 1985." Amended Complaint, ¶¶ 39-40, and, finally, "[t]hat the acts of the defendants were done with the purpose and intent of depriving [her] of the lawful exercise of the said right to campaign on behalf of others for political office,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                        Page 6
Not Reported in F.Supp., 1998 WL 199843 (E.D.N.Y.)
**(Cite as: 1998 WL 199843 (E.D.N.Y.))**

right to franchise, right to support political candid-
ates, right of suffrage, right to campaign and her
right to participate in the election of political can-
didates to office."    Amended Complaint, ¶ 35.

In *Griffin*, the Court considered the effect of a lim-
iting amendment addressing animus on the intended
coverage of § 1985(3) in words that are equally ap-
plicable here:

> That the statute was meant to reach private action
> does not, however, mean that it was intended to
> apply to all tortious, conspiratorial interferences
> with the rights of others.    For, though the sup-
> porters of the legislation insisted on coverage of
> private conspiracies, they were equally emphatic
> that they did not believe, in the words of Repres-
> entative Cook, "that Congress has a right to pun-
> ish an assault and battery when committed by two
> or more persons within a state."    The constitu-
> tional shoals that would lie in the path of inter-
> preting § 1985(3) as a general federal tort law can
> be avoided by giving full effect to the congres-
> sional purpose--by requiring, as an element of the
> cause of action, the kind of invidiously discrimin-
> atory motivation stressed by the sponsors of the
> limiting amendment.

*Griffin*, 403 U.S. at 101-02.

Plaintiff points to two decisions which she claims
support her contention that "supporters of a politic-
al candidate" qualify for protection under §
1985(3), *Cameron v. Brock*, 473 F.2d 608 (6th
Cir.1973) and *Selzer v. Berkowitz*, 459 F.Supp. 347
(E.D.N.Y.1978).    Besides the absence of any alleg-
ation that she was set upon by defendants because
of her support for a political candidate, which was
held actionable in *Cameron*, it is not clear whether
*Cameron* remains good law after *Scott*.    As this
court has previously noted, "[i]n *Scott* the Supreme
Court suggested that section 1985 might not extend
to discrimination against political groups except
where racial animus was involved." *Platsky v.
Kilpatrick*, 806 F.Supp. 358 (E.D.N.Y.1992). [FN7]

> FN7. The reasoning of the other decision
> relied upon by plaintiff, *Selzer*, was ex-
> pressly rejected by the Second Circuit in

*Gagliardi v. Village of Pawling*, 18 F.3d
188, 194 (2d Cir.1994).

For these reasons, this cause of action is also dis-
missed.

CONCLUSION
*7 For the foregoing reasons, defendants' motion is
granted.

SO ORDERED.

Not Reported in F.Supp., 1998 WL 199843
(E.D.N.Y.)

END OF DOCUMENT

## **CERTIFICATE OF SERVICE**

I, Daniel M. Silver, hereby certify that on October 30, 2007, I caused a copy of the

foregoing documents to be served upon counsel of record via the CM/ECF file and Serve system.


/s/ Daniel M. Silver
Daniel M. Silver (DE Bar ID #4758)