IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK BONK, as trustee of the Harry and Patricia Bonk Irrevocable Trust, HARRY BONK and PATRICIA BONK, | : : : : |
| Plaintiffs, | : : |
| v. | : C. A. No. 06-285-GMS/MPT |
| RICHARD WEZNER, JOHN HANCOCK MUTUAL LIFE INSURANCE CO. and METLIFE, INC., | : : : : |
| Defendants. | : |

### Memorandum Order

**1. Introduction**

This case involves claims of fraudulent activities alleged by Patricia and Harry Bonk (collectively "Bonks") against their life insurance agent, Richard Wezner ("Wezner"), and his various employers which resulted in injuries to the Bonks. The original complaint was filed on March 9, 2006 in the Superior Court of the State of Delaware.[1] The case was removed to the United States District Court for the District of Delaware on May 1, 2006 pursuant to 28 U.S.C. §§ 1441 and 1446. Currently before the court are Defendant Metlife Inc.'s ("Metlife") motion to dismiss (D.I. 5) pursuant to Fed. R. Civ. P. 12(b)(6), and plaintiffs' motion for leave to file first amended complaint (D.I. 131). This opinion addresses both motions.

**2. Background**[2]

---

[1] D.I. 131.

[2] All background facts are evinced from D.I. 5, D.I. 10, D.I. 131 and D.I. 132.

The Bonks are elderly individuals who purchased various life insurance polices from Wezner beginning in 1991. The Bonks continued to engage Wezner regarding insurance matters for over a decade after that initial transaction. From March 1999 until April 2005, Wezner was an employee of Metlife. The Bonks allege that Wezner perpetrated a fraudulent scheme which replaced the Bonks' initial insurance policies with other insurance policies, as well as, purchasing and selling those policies without their consent. The Bonks assert that the scheme resulted in the loss of valuable coverage, higher premiums and the loss of substantial built-up cash values in the policies.

The Bonks allege that Metlife knowingly accepted the premium benefits conferred on it by Wezner. After discovery commenced, the Bonks filed the motion for leave to file first amended complaint currently before the court. The only opposition raised by any defendant to the Bonks' current motion is by Metlife who opposes the addition of the negligent supervision claim asserted against it. The Bonks argue, in relation to that specific allegation, that Metlife had a duty to supervise Wezner throughout the tenure of his employment with it.

**3. Legal Standard**

At the current stage of the litigation process, a party may amend its pleading only by leave of the court, and leave under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires."[3] "This approach ensures that a particular claim will be decided on

---

[3] Fed. R. Civ. P. 15(a); see *Foman v. Davis*, 371 U.S. 178, 181 (1962).

the merits rather than on technicalities."[4] The Supreme Court delineates limited reasons to diverge from the standard of freely granting leave to amend. Those reasons include; "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment."[5]

Under Fed. R. Civ. P. 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[6] The Rule 15(c) relation back test is not "mechanical or restrictive; [the] court should examine whether original pleading provides defendant with fair notice of general factual situation upon which amended complaint [is] based."[7] Rule 15(c) should be read in conjunction with the general provisions of Rule 15(a) that leave to amend shall be freely granted as justice so requires.[8]

## 4. Discussion

Metlife, in support of its opposition to plaintiffs' motion for leave to amend, sets forth two related arguments. First, Metlife argues that the negligent supervision claim is

---

[4] *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

[5] 371 U.S. at 181; *see also Hill v. Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

[6] Fed. R. Civ. P. 15(c).

[7] *Finley Associates, Inc. v Sea & Pines Consolidated Corp.*, 714 F.Supp. 110, 116 (D. Del. 1989) citing *Hill v. Equitable Bank, N.A.*, 599 F.Supp. 1062 (D. Del. 1984).

[8] *Id.* citing *Yorden v. Flaste*, 373 F.Supp. 516, 518-19 (D. Del. 1974).

time-barred.[9] Second, in relation to the time-barred argument, Metlife contends that the negligent supervision claim does not relate back under the Rule 15(c) standard.

With respect to its first argument, Metlife points out that a claim for negligent supervision is subject to a three-year statute of limitations under Delaware law.[10] Metlife contends that the transactions at issue concluded on July 15, 2003, the date of the issuance of the last policy sold by Wezner to the Bonks. Metlife notes that the Bonks' motion to amend was filed on October 12, 2007, over four years later.

Next, Metlife argues that Rule 15(c) does not provide an appropriate procedural device to enable the Bonks to bring a claim of negligent supervision. Metlife posits that the original claims for vicarious liability[11] do not provide sufficient notice that a direct claim may be asserted against it based on the underlying events.[12] Ultimately, Metlife contends that Rule 15(c) does not save the negligent supervision claim from being barred by the applicable statute of limitations.

The court will initially address Metlife's first argument, and in turn, decide whether the negligent supervision claim is, in fact, time barred. Metlife suggests the date of July 15, 2003 as the date on which the statute of limitations clock should begin

---

[9] Arguing that if a claim is time-barred under the statute of limitations, an amendment would be futile. See *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

[10] 10 Del. C. § 8106.

[11] See D.I. 10 Ex. A.

[12] See *Cupertino v. Marra*, 1992 WL 297430 (D. Md. July 29, 1992), aff'd, *Cupertino v. Schneider*, 981 F.2d 1250 (4th Cir. 1992); see also *Guveiyian v. Keefe*, 1998 WL 199843, at *4 (E.D.N.Y. Mar. 24, 1998).

4

to run on a claim of negligent supervision. Although a three year statute of limitations applies to the proposed claims,[13] the court does not agree that July 15, 2003 is the proper date for the clock to start running. Rather the time period on the negligent supervision claim begins on April 22, 2005, the date when Wezner ceased to be employed by Metlife.

The limitations period does not begin to run at the earliest until the end of Wezner's employment with Metlife because the allegations of negligent supervision encompass Metlife's duty to actively supervise the actions and conduct of Wezner for the entire time that he was employee of the company[14]. While Wezner sold the last policy to the Bonks in July 2003, Metlife's duty to supervise Wezner did not terminate on the date of the final sale. Therefore, the three year statute of limitations period would not begin until April 22, 2005, which means that the Bonks had until April 22, 2008 to file their motion to amend without the need to rely on Rule 15(c). Since the motion to amend was filed within the three year time frame, the proposed allegations are not time-barred. As a result, it is unnecessary to address whether the claim for negligent supervision relates back. Consequently, the Rule 15(a) standard to determine if the motion should be granted applies which requires freely granting leave to amend.[15]

---

[13] *See* 10 Del. C. § 8106.

[14] Since the court finds that the proposed amendment was timely filed before the earliest statute of limitations date, the application of the discovery rule (that is when the Bonks knew or should have known of the alleged fraud) need not be addressed.

[15] Nothing on the record indicates that granting leave to amend would cause "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

In relation to Metlife's motion to dismiss, Metlife contends that the present matter should be dismissed, in part, because the Bonks named the wrong party in the original complaint. Metlife alleges that Metlife, Inc. is not the proper party to the suit because Wezner was never employed by Metlife, Inc. The amended complaint, which the Bonks will be permitted to file, names Metlife Securities, Inc. and Metropolitan Life Insurance Company as defendants. The amendment, therefore, alleviates the basis for dismissal caused by the naming of the wrong party. Furthermore, the other assertions made by Metlife in support of its motion to dismiss pertain to the original complaint, which will be replaced by the amended complaint. Since the motion to dismiss relates to the original complaint, the issues raised in the motion are now mooted by the allowance of the amended complaint.

## 5. Conclusion

For the reasons contained herein, plaintiffs' motion for leave to file an amended complaint (D.I. 131) is GRANTED. Defendant Metlife's motion to dismiss (D.I. 5) is DENIED as MOOT.

To provide a clear entry on the docket, plaintiffs shall file the first amended complaint on or before July 31, 2008. Defendants shall file their responses to the first amended complaint on or before August 15, 2008.

July 22, 2008

_____
U.S. Magistrate Judge Mary Pat Thynge

---

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment." *quoting Foman,* 371 U.S. at 181.